824 So.2d 206 (2002)
Robert S. McINTYRE, as guardian of the person and property of John M. McIntyre, an incapacitated adult, Appellant/Cross-Appellee,
v.
Glenda B. McINTYRE, n/k/a Glenda B. Williams, Appellee/Cross-Appellant.
No. 2D01-1123.
District Court of Appeal of Florida, Second District.
July 10, 2002.
Rehearing Denied August 22, 2002.
Cynthia L. Greene and Paula Revene of Cynthia L. Greene & Associates, P.A., Miami, for Appellant/Cross-Appellee.
Robert L. Donald of Law Office of Robert L. Donald, Fort Myers; and William T. Haverfield of Pavese, Haverfield, Dalton, Harrison & Jensen, LLP, Fort Myers, for Appellee/Cross-Appellant.
PLEUS, ROBERT J., JR., Associate Judge.
This appeal involves the interpretation of a postnuptial agreement by the trial court in a dissolution of marriage case. Several issues regarding the final judgment are raised by both sides. We conclude only one deserves discussion.
Glenda B. McIntyre, now known as Glenda B. Williams, and John M. McIntyre were married in August 1989. A postnuptial agreement was signed in December 1991. At the time the postnuptial agreement was signed, John owned, in his individual name, a home in Tequesta, near Jupiter, Florida. This home had been obtained during the marriage. After signing the postnuptial agreement, both parties quitclaimed their interest in this property into a trust created by John.
The postnuptial agreement provides that the parties intended to preserve the rights of each regarding their separate property and that they would not seek alimony or support from each other. The disputed provisions were contained in paragraph 4 of the postnuptial agreement which set forth the parties' rights and obligations in the event of separation or divorce:
4. Separation or Divorce. At the time of any entry of a final judgment of divorce, the home which they intend to occupy jointly shall remain at all times *207 the property of John and John agrees to pay to Glenda the sum of Three Thousand Five Hundred Dollars ($3,500) per month, which sum will be subject to cost of living adjustments, payable monthly until the earlier of Glenda's death, remarriage or cohabitation with a member of the opposite sex. John also agrees that he will provide Glenda with medical insurance for a period of two (2) years following the date of divorce. With the exception of the prior sentences, in the event of a separation or in the event of the institution by either John or Glenda of an action for separation, divorce, or dissolution of the marriage for any reason:
ANeither party shall make any claim against the separate property of the other.
BNeither shall claim or seek alimony, support or maintenance from the other.
When they signed the postnuptial agreement, the Tequesta home was the home which the parties intended to "occupy jointly." A few years later, they decided to sell the Tequesta home. It was their intent that upon the sale they would move into a condominium in Jupiter which was titled in both names. The husband paid the full $210,000 purchase price of the Jupiter condominium with his nonmarital assets.
The Tequesta house was finally sold in April 1995, and the sales proceeds were paid into the trust, which was the title holder of record. Glenda did not share in the proceeds or benefit from the sale.
Paragraph 2 of the final judgment of dissolution provides as follows:
2. The payments required by paragraph 4, page 5 of the Post-Nuptial Agreement are interpreted by the Court as alimony payments. However, by agreement of the parties, they do not end on the payor's death, but are a charge against his estate. The payments in the amount of $3,500.00 shall begin August 1, 2000, and shall be paid directly to the Wife. The cost of living increase shall begin as of that date, and be implemented annually.
Glenda contends the monthly payment of $3500 is a property settlement which does not terminate at John's death. John's guardian contends the $3500 is alimony, and under Florida law as set forth in O'Malley v. Pan American Bank of Orlando, N.A., 384 So.2d 1258 (Fla.1980), alimony terminates at death.
We conclude the monthly payments of $3500 were property settlement and not alimony. Thus, the payments would be a charge against John's estate in the event of his death.
"The test for determining when periodic payments constitute support or a methodology for division of property, seems to be whether the payor spouse's payments are given in exchange for a reciprocal exchange of property interests from the recipient spouse." Petty v. Petty, 548 So.2d 793, 795 (Fla. 1st DCA 1989). In Draper v. Draper, 604 So.2d 946, 947 (Fla. 2d DCA 1992), Judge Campbell said that when a spouse "relinquish[es] valuable property rights in return for receiving other rights, including the right to receive periodic payments," this is a property settlement and not alimony. The postnuptial agreement in this case expressly and directly states that the wife's right to receive the monthly payments is consideration for her relinquishment of a property right. The payment is not designated as alimony in the agreement. The wife specifically gave up her right to seek or claim alimony, thereby lending further support to the conclusion that the parties did not intend the monthly payments to be alimony. Also, the wife actually executed a deed which transferred *208 the property into John's trust, thus forfeiting her rights in the former Tequesta marital home and thus performing her end of the property division bargain.
Further support for our conclusion is found in Hughes v. Hughes, 553 So.2d 197 (Fla. 2d DCA 1989), where the husband appealed the trial court's modification of monthly payments called for by the parties' settlement agreement, contending that the payments were nonmodifiable property settlement rather than alimony. This court agreed that the payments were property settlement and reversed. The court observed that a contractual provision is a property settlement where "one party surrenders valuable property interests in consideration for the right to receive periodic payments." Id. at 198. The court noted that the wife agreed to give up her interest in the husband's property and that both parties agreed not to make claims for alimony against one another. Id. These factors showed that the provision was a property settlement and not alimony.
Here, too, the right to receive monthly payments was given to the wife in exchange for her relinquishment of property rights. The wife's right to receive periodic payments upon divorce was directly linked to the wife's waiver of valuable property rights.
We thus remand for the trial court to amend paragraph 2 of its final judgment and reflect that the monthly payments are a property settlement and not alimony. The trial court was correct, however, in concluding that the payments do not end on John's death.
Affirmed in part; reversed in part; and remanded.
GREEN and SALCINES, JJ., Concur.