881 So.2d 1193 (2004)
A. Glenn BRASWELL, Appellant,
v.
Renee BRASWELL, Appellee.
Nos. 3D02-2853, 3D03-1615, 3D02-2993.
District Court of Appeal of Florida, Third District.
September 15, 2004.
*1195 Caruana and Lorenzen, and Albert Caruana, Miami, for appellant.
Elser, Foster-Morales & Kopco; and Greene & Smith, and Cynthia Greene, Miami, for appellee.
Before COPE, FLETCHER, and RAMIREZ, JJ.
RAMIREZ, J.
We have for review two orders which found that a $75,000 per month default interest payment provision is in the nature of support and a cross-appeal claiming that a higher default interest is due than what the trial court awarded. We reverse the first and affirm the second.
In consolidated case numbers 3D02-2853 and 3D03-1615, A. Glenn Braswell, the former husband, appeals the trial court's non-final order (the September 23, 2002 Order) which provides that a $75,000.00 per month default interest payment provision is in the nature of support, and thus enforceable by contempt. Mr. Braswell also appeals the trial court's non-final order (the May 22, 2003 Order) which provides that $23 million in equitable distribution payments due to the former wife was also in the nature of support so that an injunction entered against Mr. Braswell's Miami Beach, Florida residence should remain in place.
Renee Braswell, the former wife, cross-appeals that portion of the trial court's September 23, 2002 Order which determines that the $75,000.00 per month default interest payment to be paid to Mrs. Braswell was only in the amount of $300,000.00, rather than $600,000.00, as Mrs. Braswell contends. In addition, in case number 3D02-2993, Mrs. Braswell appeals an order dated July 30, 2002 and the related Amended Final Money Judgment, in which the trial court also determined that the $75,000.00 per month default interest payments due to Mrs. Braswell was in the amount of only $300,000.00.

I. PROCEDURAL HISTORY

A. Mediated Settlement Agreement
Mr. Braswell filed his petition for dissolution of marriage on August 3, 1999. The parties were married for eight years, and there was one minor child born of the marriage on January 21, 1998. At the time of the filing, Mr. Braswell was under federal grand jury investigation for criminal tax related issues. During the dissolution proceedings, Mr. Braswell invoked his Fifth Amendment right against self-incrimination. The trial court granted him the right to assert this privilege with respect to all financial information in the dissolution case. Thus, Mr. Braswell has not provided any financial information to Mrs. Braswell and to the trial court in this litigation.[1]
On March 15, 2000, the parties entered into a hand-written Mediated Settlement Agreement where Mr. Braswell was to pay $42 million in installments to Mrs. Braswell. Mr. Braswell was also to pay Mrs. Braswell $40,000 per month for alimony, until he paid her $23 million. Once Mr. *1196 Braswell paid $23 million to Mrs. Braswell, the $40,000 support payments to Mrs. Braswell would cease.[2] The pertinent paragraphs of the Mediated Settlement Agreement provide the following:
4. From the date wife vacates the marital residence, until the wife has received 23 million dollars, the husband shall pay to the wife the sum of $40,000.00 per month nontaxable to the wife, nondeductible by the husband.
5. As the equitable distribution of the assets of the marriage and as full and final settlement of the issues in the case the parties agree to a total payment to the wife of $42 million as follows:
$500,000 on or before 3-17-00
$4.5 million on or before 5-1-00
$6 million on or before 7-15-00
$6 million on or before 9-15-00
$6 million on or before 9-15-01
$6 million on or before 9-15-02
$6 million on or before 9-15-03
$6 million on or before 9-16-04
6. In the event of default in the payments described in 5 above as defined in this agreement the parties agree that there shall be default interest in the amount of 15% of the unpaid balance commencing 30 days from the date payment is due. The Husband has 5 additional months to cure default. In the event payment has not been made the wife has the right at her option to seek an equitable distribution of the marital assets valued as of the date of filing. The court shall be informed of the money the Wife has already received.
7. The parties further agree that in the event of default by the husband in the sums due to the wife in 5 above the wife may seek alimony from the husband and in no manner waives her right to seek support in the event of default.
...
9. Other than as specifically defined in ¶ s 3, 4 and 6, 7 wife waives her claim for alimony, permanent rehabilitative or lump sum now and forever.
...
13. The obligations undertaken pursuant to this agreement are non dischargeable in bankrupcy (sic) because they are in the nature of support. However the parties agree that the husband may discharge his obligations under ¶ 14 of this agreement.
...
20. The Husband shall receive the assets not distributed to the Wife in this agreement and not solely titled to her.

B. Arbitrator's Interpretation and Clarification of Default Interest Provision
When disputes arose regarding the default interest provisions of the Settlement Agreement, the parties invoked the binding arbitration provisions of Paragraph 11 of the Agreement and sought an interpretation by the arbitrator regarding the meaning of the provisions of the Agreement concerning a default by Mr. Braswell. On September 24, 2001, the arbitrator issued an Interpretation of Default Provisions of Mediated Settlement Agreement. The arbitrator concluded that in *1197 the event of default by Mr. Braswell, Mrs. Braswell "may at her option seek additional alimony (in addition to what she is receiving) ..." In November 2002, the arbitrator issued a second interpretation of the agreement, the Clarification of Default Provisions of Mediated Settlement Agreement, stating that Paragraph 7 permitted Mrs. Braswell to seek additional alimony in the event that she fails to receive her equitable distribution payments in a timely manner. The arbitrator also stated that Paragraph 7 of the agreement was intended to safeguard Mrs. Braswell's income and to encourage Mr. Braswell's compliance with the agreement.

C. September 23, 2002 Order
Following the execution of the Settlement Agreement, Mr. Braswell paid the first four equitable distribution payments, a total of $17 million, and conveyed the California property valued at $1 million, which Mrs. Braswell sold for $1.2 million. He then failed to make the fifth payment, the September 15, 2001, $6 million installment payment. Although Mr. Braswell missed a payment in September 2001, he has otherwise continued paying Mrs. Braswell the $40,000 monthly payment for support he was required to make, and is now current on those payments. The Settlement Agreement stated that there was to be 15% interest and a thirty-day grace period. Mr. Braswell made only one default interest payment for $75,000.00 (15% of $6 million).
When Mr. Braswell failed to make the subsequent four default interest payments, Mrs. Braswell filed her Motion to Enforce the Parties' Mediated Settlement Agreement Regarding Interest Payments.[3] In March 2002, the trial court determined that Mr. Braswell's obligation to pay Mrs. Braswell $40,000 per month until such time as she had been paid $23,000,000.00 was alimony for Mrs. Braswell, in the nature of support. Specifically, the trial court found in its March 22, 2002 Order that "the $40,000 payment is alimony for the support of the Former Wife and while the Agreement could have been drafted more clearly, the character of the payment is not ambiguous." Mr. Braswell appealed this characterization of the $40,0000 per month payment, and this Court affirmed in Braswell v. Braswell, 836 So.2d 1061 (Fla. 3d DCA 2003).
The trial court entered a Final Money Judgment on July 30, 2002, against Mr. Braswell for $6,600,000.00. This amount was based on Mr. Braswell's failure to pay the $6,000,000.00 due to Mrs. Braswell on September 15, 2001, plus default interest at the rate of 15% ($75,000.00 per month) pursuant to Paragraph 6 of the agreement (which included eight months of default interest). One month after the entry of the Final Money Judgment, Mr. Braswell filed a motion for relief from money judgment, alleging that the terms of the mediated settlement agreement provided for a total of only five months of default interest and that at the end of the six month cure period, the default interest did not continue to accrue, and thus he owed only $300,000.00 in interest rather than $600,000.00. The trial court agreed and entered an amended final money judgment for $6,300,000.00. Mrs. Braswell cross-appeals this order.
Thereafter, the court entered its order concluding that the $75,000.00 per month in default interest payments was also in the nature of support such that Mr. Braswell could be held in contempt if he did not pay the interest. Mr. Braswell appeals this ruling.

*1198 D. May 22, 2003 Order
In July 2002, Mrs. Braswell sought a temporary injunction against Mr. Braswell to prohibit his transfer or alienation of his assets. Mrs. Braswell made her request ore tenus at a hearing before the trial court and then at the direction of the trial court, filed in September 2002 her Amended Verified Motion for Injunction. The trial court granted her motion, following a non-evidentiary hearing. Mr. Braswell filed a motion to dissolve and/or modify the injunction and in the alternative, a motion to increase the bond. The court dissolved the temporary injunction except as to Mr. Braswell's condominium property at 1500 Ocean Drive, which he claimed was homestead property and thus exempt from creditors.
On April 24, 2003, the trial court held a non-evidentiary hearing on Mr. Braswell's renewed motion to dissolve the injunction as it related to his condominium residence. The trial court ruled that the first $23 million of equitable distribution payments due to Mrs. Braswell were in the nature of support, such that an injunction could remain in place as to the property in order to secure payment of that obligation. The trial court denied the motion to dissolve the temporary injunction as to Mr. Braswell's alleged homestead property. The trial court did not increase the $100,000 injunction bond on the alleged homestead property which was purchased for $5.5 million, nor did it grant an evidentiary hearing regarding the amount of the bond.

II. DEFAULT INTEREST PROVISION.
Mr. Braswell first contends that the trial court erred in finding the $75,000.00 default interest provision for a missed equitable distribution installment payment to be for support, subject to enforcement by contempt and in finding the first $23 million of equitable distribution installment payments to be "in the nature of support." We agree and conclude that under the facts presented here, the 15% default interest payment on the missed installment of the equitable distribution payments during the cure period in question is not in the nature of support, but is equitable distribution.
Florida law provides that the two types of awards usually arise from marital settlement agreements, support awards and equitable distribution awards. A support award can be enforced by contempt proceedings and incarceration. Equitable distribution awards or property division awards are debts which cannot be enforced by contempt proceedings or incarceration. See Hertrich v. Hertrich, 643 So.2d 115 (Fla. 5th DCA 1994); Filan v. Filan, 549 So.2d 1105 (Fla. 4th DCA 1989). The remedies available to enforce an equitable distribution or property division award are those available to creditors against debtors. See Veiga v. State, 561 So.2d 1335, 1336 (Fla. 5th DCA 1990).
In addition, marital settlement agreements should be construed and interpreted as other contracts. See Bacardi v. Bacardi, 386 So.2d 1201, 1203 (Fla. 3d DCA 1980). Contract construction is a question of law if the language of the contract is clear and unambiguous. See Jaar v. University of Miami, 474 So.2d 239, 242 (Fla. 3d DCA 1985). Thus, the plain meaning of the language used by the parties in a contract should control. See Bingemann v. Bingemann, 551 So.2d 1228, 1231 (Fla. 1st DCA 1989).
Here, the parties' Mediated Settlement Agreement is unclear and internally inconsistent. Paragraph four of the agreement calls for monthly payments of $40,000. In a prior appeal, we held that those payments constituted support. Braswell v. *1199 Braswell, 836 So.2d 1061 (Fla. 3d DCA 2003). In paragraph five of the Agreement, it states that the $42 million payable in $6 million installments to Mrs. Braswell is equitable distribution of the assets of the marriage. It provides for installment payments of a total of $42 million over a period of several years. The default interest payments should thus be deemed equitable distribution payments because interest on an equitable distribution installment payment is equitable distribution. If we determine that the character of the principal obligation is equitable distribution in nature, then the interest must also be regarded as equitable distribution. If the character of the principal obligation were support, then the interest would be support. Because the $6 million missed payment in question was part of the equitable distribution scheme, the 15% interest on that $6 million missed payment, which is $75,000.00, is also characterized as equitable distribution and cannot be enforced by contempt.
Mrs. Braswell argues that the equitable distribution payments of paragraph 5 should be characterized as alimony because, under the parties' agreement, the monthly support payments terminate once she has received $23 million in equitable distribution payments. She contends that at least $23 million of the equitable distribution should be viewed as support. While there may be some logic to this argument by virtue of the termination of monthly support upon payment of the $23 million, we cannot agree that this converts what is otherwise equitable distribution into support.
Further support for our finding that the default interest provision is equitable distribution is the fact that in the Clarification issued by the arbitrator on November 19, 2001, the arbitrator described the provisions in paragraph 5 of the agreement to be equitable distribution payments. She also stated "paragraph 7 permits the wife to seek additional alimony from the husband in the event that she fails to timely receive her equitable distribution payments." The arbitrator continued by stating that the cure period outlined in paragraph 6 "restricts the wife from revisiting the parties' equitable distribution until the cure period has expired."
With regard to what is in the nature of support, support generally means sustenance or nourishment. See Howell v. Howell, 207 So.2d 507, 510 (Fla. 2d DCA 1968). Support is a payment to provide for the need and necessities of life. Mallard v. Mallard, 771 So.2d 1138, 1140 (Fla.2000). The purpose of support is to prevent a dependent party from "becoming a public charge or an object of charity." Killian v. Lawson, 387 So.2d 960, 962 (Fla.1980).
In determining whether a payment provision is for support or whether it is a property settlement payment, there are certain characteristics to consider. For instance, according to section 61.14, Florida Statutes (2001), a support award is modifiable. See also Cambest v. Cambest, 367 So.2d 686, 687 (Fla. 3d DCA 1979). A property settlement provision, however, is non-modifiable, regardless of the parties' financial positions, when the agreements are incorporated into the final judgments of dissolution of marriage. See Langer v. Langer, 463 So.2d 429 (Fla. 3d DCA 1985). Here, the default interest provision and equitable distribution provision are not subject to modification. In addition, the trial court stated that although it deemed the first $23 million to be in the nature of support for purposes of an injunction, it would not deem the payments "support" for purposes of modification.
*1200 Another characteristic to consider is that support is not dischargeable in bankruptcy, while obligations under a property settlement agreement may be dischargeable. See De Lapouyade v. De Lapouyade, 711 So.2d 1202 (Fla. 2d DCA 1998). Here, paragraph 13 of the parties' Agreement states that all payments are not dischargeable in bankruptcy because "they are in the nature of support." Mrs. Braswell contends that the default interest payments and paragraph 5 equitable distribution payments are support based upon this provision in paragraph 13. However, this court, as well as the Bankruptcy Court, looks to the substance of the underlying obligations and are not bound by the parties' characterization. Paragraph 13 is not binding on this court and does not convert the Paragraph 5 equitable distribution into support. See Huey v. Huey, 643 So.2d 1141, 1142-43 (Fla. 4th DCA 1994); In re: Carbia, 113 B.R. 761, 763 (Bankr.S.D.Fla.1990) (labeling a payment "alimony" in a settlement agreement is not determinative of the nature of such awards in concluding whether, in fact, it is alimony rather than property settlement; the fact that a state court has used or approved such language is not determinative, because federal law prevails in determining whether an obligation is alimony, support, or a property settlement); In re: Basile, 44 B.R. 221 (Bankr.M.D.Fla.1984) (under the United States Bankruptcy Code, federal law rather than state law should govern and be determinative as to whether obligation is in nature of alimony, and thus not dischargeable, or is in nature of support or property settlement; bankruptcy court now looks beyond labels placed upon obligation by state courts and considers all relevant facts and circumstances).
Furthermore, support ends upon the death of either party or the re-marriage of the payee. See Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980). Here, the equitable distribution payments and default interest payments in this case do not end upon the death of either party or upon the re-marriage of Mrs. Braswell. The paragraph 5 equitable distribution payments end in September 2004, and the paragraph 6 default interest payment ends after the cure-period expires.
Finally, support is not chargeable to the payor's estate. See White v. White, 429 So.2d 730 (Fla. 1st DCA 1983). Here, the payment is chargeable to Mr. Braswell's estate.
It is undisputed that Mrs. Braswell received $17 million in cash and a California residence she sold for $1.2 million within six months of the date of the agreement. She later obtained a judgment in the amount of $6.3 million, and later obtained another money judgment for another $6 million. During this time, Mrs. Braswell received and continues to receive $40,000.00 per month in support. In addition, pursuant to paragraph 7 of the agreement, she has sought additional alimony. We conclude that the payments due Mrs. Braswell under paragraph 5 of the Agreement did not serve the purpose of true support and maintenance.[4]
We also take into consideration the provision in paragraph 9 of the Agreement, whereby Mrs. Braswell expressly waived the right to contend that paragraph 5 payments were support. Paragraph 9 states:
Other than as specifically defined in paragraphs 3, 4, 6 and 7 the wife waives her claim for alimony, permanent rehabilitative or lump sum now and forever.
*1201 In McIntyre v. McIntyre, 824 So.2d 206 (Fla. 2d DCA 2002), the court stated that "[t]he test for determining when periodic payments constitute support or a methodology for division of property, seems to be whether the payor spouse's payments are given in exchange for a reciprocal exchange of property interests from the recipient spouse." Id. at 207. The Mediated Settlement Agreement in this case expressly states that as the equitable distribution of the assets of the marriage and as "full and final settlement of the issues in the case," the parties agreed to the $42 million in payments to Mrs. Braswell. Paragraph 5 of the Agreement also references the transfer of the California property to the wife, lending further support to the conclusion that the parties did not intend the monthly payments to be alimony. See also Hughes v. Hughes, 553 So.2d 197 (Fla. 2d DCA 1989) (the court observed that a contractual provision is a property settlement where one party surrenders valuable property interests in consideration for the right to receive periodic payments; the court noted that the wife agreed to give up her interest in the husband's property and that both parties agreed not to make claims for alimony against one another; these factors showed that the provision was a property settlement and not alimony).
Here, Mr. Braswell agreed to pay the $42 million in payments to Mrs. Braswell in exchange for property rights in other marital real estate and all alleged business interests. In her counter-petition for Dissolution of Marriage, Mrs. Braswell claimed that she was entitled to an equitable distribution of all of the marital assets. In exchange for all her interest in those assets, Mr. Braswell agreed to pay her $42 million over a set period of time. These payments are equitable distribution in exchange for Mrs. Braswell relinquishing her property rights in these assets. Simply because these equitable distribution payments are made over a certain period of time does not convert these payments into support payments. As such, we determine that Mrs. Braswell waived the right to contend that the payments due under paragraph 5 of the Agreement were in the nature of support.
In the event that Mr. Braswell failed to make any $6 million installment payment when due, the parties agreed that Mrs. Braswell had options after the six-month cure period expired and the default was not cured. First, she could seek a de novo equitable distribution of the marital assets valued as of the date of filing. Equitable distribution would then be recalculated. Second, Mrs. Braswell could opt to declare Mr. Braswell in default of the agreement and seek to enforce the agreement as a creditor of Mr. Braswell and seek additional alimony. Thus, if Mrs. Braswell chose not to seek a de novo equitable distribution and seek enforcement of a money judgment, under paragraph 7 of the agreement, she had another support remedy. She could seek additional alimony over and above the $40,000 per month she was already receiving, which is what Mrs. Braswell did. Support is clearly already provided for in the agreement in the event of a default by Mr. Braswell.
In sum, we conclude that the first $23 million of equitable distribution installment payments and the $75,000.00 default interest provision for a missed equitable distribution installment payment are not subject to enforcement by contempt because they are not in the nature of support. The purpose of the equitable distribution provision of paragraph 5 and the default interest provision of paragraph 6 was not support, as support was already provided for in the Agreement. The provision divided the marital property, and the default interest provision allowed Mr. Braswell a cure *1202 period. As such, the entire $42 million is equitable distribution. In light of the explicit language of the Mediated Settlement Agreement, the trial court erred in finding that the default interest provisions of the mediated settlement agreement and the first $23,000,000 due to Mrs. Braswell were in the nature of support for Mrs. Braswell and thus enforceable by contempt.

III. SEPTEMBER 23, 2002 ORDER FINDING MR. BRASWELL IN CONTEMPT.
Mr. Braswell next contends that the trial court's order does not recite facts and findings necessary for an enforceable contempt order. In light of our holding, this issue has become moot.

IV. MAY 22, 2003 ORDER REGARDING TEMPORARY INJUNCTION.
With respect to Mr. Braswell's third issue on appeal, that the trial court erred as a matter of law and abused its discretion in refusing to dissolve the injunction as to homestead property, we find that the issue is moot. Mr. Braswell states in his Reply Brief that he is withdrawing his appeal regarding the trial court's denial of his motion to dissolve the injunction as to his homestead property because the trial court held a five-day hearing on March 15-19, 2004, on the issue of homestead property and has entered an order on this issue.

V. SUFFICIENCY OF THE INJUNCTION BOND.
Turning next to Mr. Braswell's fourth issue on appeal, he contends that the amount of the bond is legally and factually inadequate, and we agree. The purpose of an injunction bond is to provide sufficient funds to cover the adverse party's costs and damages in the event the injunction is later determined to have been improvidently entered. See Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So.2d 1018 (Fla.1989). Here, the trial court's order granting the temporary injunction provides for a $100,000.00 bond. The trial court received no evidence in fixing this amount and stated no basis for the amount. The Ocean Drive property was purchased for $5.5 million. As such, as a matter of law, we agree with Mr. Braswell that $100,000.00 is a legally insufficient bond to cover costs and damages. See Vargas v. Vargas, 771 So.2d 594 (Fla. 3d DCA 2000).
In this case, Mr. Braswell was given no opportunity to present evidence on the appropriate amount of the bond. He requested an evidentiary hearing on the amount of the bond, however no hearing was granted. We conclude that the trial court was required to conduct an evidentiary hearing in order to determine the amount of the injunction bond and erred in not doing so. See SeaEscape, Ltd., Inc. v. Maximum Marketing Exposure, Inc., 568 So.2d 952 (Fla. 3d DCA 1990). As such, we reverse and remand the case with respect to this issue so that the trial court can conduct an evidentiary hearing regarding the amount of the bond.

VI. MRS. BRASWELL'S CROSS-APPEAL.
With regard to Mrs. Braswell's cross-appeal, she contends that the trial court erred as a matter of law in its interpretation of the "default interest" provisions of the settlement agreement by finding that the default interest is only to be paid by Mr. Braswell for a period of five months. However, we agree with the trial court that the default interest was only to be paid by Mr. Braswell for a period of five months.
*1203 Paragraph 6 of the Mediated Settlement Agreement states the following:
6. In the event of default in the payments described in ¶ 5 above as defined in this agreement the parties agree that there shall be default interest in the amount of 15% of the unpaid balance commencing 30 days from the date payment is due. The husband has 5 additional months to cure default. In the event payment has not been made the wife has the right at her option to seek an equitable distribution of the marital assets valued as of the date of filing. The court shall be informed of the money the wife has already received.
Evidently, after the expiration of the five-month cure period, Mrs. Braswell had the option to void the agreement and seek an equitable distribution of the marital assets valued as of the date of filing or seek to enforce the settlement agreement. She sought to enforce the agreement by obtaining a judgment which began to accrue interest at the statutory rate.
The trial court entered a $6,000,000 judgment against Mr. Braswell. Default interest was payable to Mrs. Braswell only during the five-month cure period. After the cure period expired, Mrs. Braswell had legal recourse against Mr. Braswell, which was to enforce the Mediated Settlement Agreement or seek an equitable distribution. She chose to enforce the Mediated Settlement Agreement, and obtained a money judgment. There is no language in the Mediated Settlement Agreement about what the default interest rate would be after the five-month cure period expired.
As general rule, debt bears interest at contract rate only to date of final decree; after that date, the total indebtedness, including principal and interest, attorneys' fees, and expenses adjudged by decree, bears interest at the statutory rate applicable to judgments and decrees generally. See Whitehurst v. Camp, 677 So.2d 1361, 1362 (Fla. 1st DCA 1996) (under doctrine of merger, cause of action on debt, together with damages recoverable thereon, merges into any judgment entered on cause of action, such that, upon entry, judgment does not bear interest as debt or as cause of action, but as judgment), review granted, 687 So.2d 1308, approved in part, 699 So.2d 679. The present case differs from the general rule, however because we interpret the parties' agreement to provide for prejudgment interest at the default rate for only a five-month period. As such, the 15% interest rate the parties agreed to applied only during the five-month cure period. After this period expired and Mrs. Braswell obtained her money judgment, that judgment accrued interest at the statutory rate for that period of time. See § 55.03, Fla. Stat. (2004) (for determination on how statutory interest rate is set in December of each year for the upcoming year). For the very same reasons previously stated in our discussion of Mrs. Braswell's cross-appeal, we affirm the trial court's order and Amended Final Money Judgment in case no. 3D02-2993.[5]

VII. CONCLUSION.
In sum, we reverse and remand the September 23, 2002 Order so that the appropriate facts and findings can be made; and reverse on the bond issue and remand for the trial court to conduct an evidentiary *1204 hearing to determine the appropriate amount of the injunction bond. We further affirm Mrs. Braswell's cross-appeal, the trial court's "Order on Former Wife's Third Amended Motion to Enforce the Parties' Mediated Settlement Agreement Dated March 15, 2000 Regarding Interest Payments and for Contempt." Finally, in case number 3D02-2993, we affirm the trial court's "Order on Former Wife's Motion to Amend Final Money Judgment, Order on Former Husband's Motion for Relief from Final Money Judgment and Order Vacating Final Money Judgment dated July 30, 2002" and the related Amended Final Money Judgment.
Affirmed in part, reversed in part, and remanded.
FLETCHER, J., concurs.
COPE, J. (concurring in part and dissenting in part).
I am in agreement with the majority opinion except for Part VI. Paragraph 6 of the Mediated Settlement Agreement provides for a default interest rate of 15% on the unpaid balance. See majority opinion at 1203. The contract allows Mr. Braswell five months to cure any default. Nowhere, however, does the agreement say that the default interest rate ends in five months.
"[A]s a general rule ... `the debt bears interest at the contract rate to the date of the final decree.'" Whitehurst v. Camp, 699 So.2d 679, 682 (Fla.1997) (citations omitted). The contract allowed Mr. Braswell a period of five months to cure the default, but he did not do so. Mrs. Braswell is entitled to default interest until the date of the judgment.
NOTES
[1] Mr. Braswell was indicted and arrested on January 13, 2003.
[2] In addition to the $42 million and the $40,000.00 per month payments, Mr. Braswell agreed to provide health insurance for the minor child, pay uncovered medical, dental and orthodontic expenses, pay for private school through high school, pay for the minor child's summer and extracurricular activities, pay for all the regular household and Mrs. Braswell's expenses while she remained at the former marital home until December 31, 2000, immediately transfer to Mrs. Braswell a residence in California valued at $1 million, and pay Mrs. Braswell's attorneys' fees and costs.
[3] On February 8, 2002 she filed an Amended Motion; on July 19, 2002, she filed a Second Amended Motion; and on July 26, 2002, she filed a Third Amended Motion.
[4] We further note that Mrs. Braswells and the minor childs support needs are addressed in other provisions of the Mediated Settlement Agreement.
[5] We note that Mrs. Braswells appeal in case number 3D02-2993 involves this very same issue. In that case, Mrs. Braswell is also contending that the trial court erred as a matter of law in its interpretation of the default interest provisions of the settlement agreement in finding that default interest is only to be paid by the former husband for a period of five months.