T.C. Summary Opinion 2007-43

UNITED STATES TAX COURT

MARGARET CAROL BURNS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5724-05S.                    Filed March 15, 2007.

Margaret Carol Burns, pro se.

Marshall R. Jones, for respondent.

GALE, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and the opinion shall not be treated as a precedent for any other case.

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code of 1986 as in effect for the taxable year in issue.

Respondent determined a deficiency in petitioner's Federal income tax for 2002 of $2,745. The sole issue for decision is whether certain payments petitioner received from her former spouse during 2002 are includible in petitioner's income under section 71(a).

## Background

Some of the facts have been stipulated and are so found. We incorporate by this reference the stipulation of facts and the exhibits attached thereto. At the time the petition was filed, petitioner resided in Pensacola, Florida.

Petitioner and William Mills Burns (Mr. Burns) were married in March 1989 and lived together as husband and wife in a house they mutually owned (marital home) until their separation around August 2000. After their separation, Mr. Burns did not reside in the marital home. Early in 2001, petitioner and Mr. Burns discussed and agreed to the terms for dividing their property and divorcing. Petitioner summarized the general terms of their agreement in a handwritten outline. The outline provided, inter alia, that (1) the marital home was to be sold with 60 percent of the net proceeds going to petitioner and the remaining 40 percent going to Mr. Burns, (2) petitioner would have sole use of the marital home until the sale was complete, and (3) Mr. Burns would pay petitioner "$1400 a month for house, yard, & animals, until house sells", and "$500 a month after house sells until I

[petitioner] can draw SS [Social Security]".  Petitioner took the outline to an attorney who had been retained by her (through her legal services plan at work) for the purpose of obtaining the couple's divorce.

Petitioner explained the outline to the attorney, including the fact that the $1,400 monthly payment to her from Mr. Burns was to contribute toward the payment of the expenses of the marital home and the couple's mutually owned elderly pets, including debt service on the mortgage and the cost of preparing the marital home for sale, and was to be taxable to Mr. Burns. Petitioner further explained that the couple had agreed that the $500 monthly payments by Mr. Burns to petitioner after the marital home was sold, until such time as she began receiving Social Security benefits, were to be taxable to petitioner.

The attorney thereafter drafted a Marital Settlement Agreement (MSA) for petitioner and Mr. Burns to review and sign. The MSA included provisions intended to memorialize the Burnses' agreements with respect to the division of all of their marital debts and all of their real and personal property.  It also contained provisions whereby petitioner and Mr. Burns relinquished any rights they may have had to each other's "retirement accounts, pensions, profit sharing plans, etc.", and released one another from all other claims and demands of any nature except as provided for in the MSA.  The MSA included an

integration clause specifying that the MSA constituted the parties' entire agreement and that it superseded any prior understanding or agreements between them.

With respect to the $1,400 and $500 monthly payment obligations agreed to by petitioner and Mr. Burns, the attorney drafted the following provision:

> 4. <u>ALIMONY FOR THE WIFE:</u>  The Husband agrees to pay to the Wife alimony in the amount of $1400.00 per month, until such time as the marital home is sold. Thereafter the Husband agrees to pay to the Wife alimony in the amount of $500.00 per month, until such time as the Wife can legally begin receiving social security benefits.  Said payments to be deposited directly into the Wife's bank account.

On reviewing this provision in the MSA before signing it, petitioner questioned the attorney as to why both payments were labeled "alimony" when she and Mr. Burns had agreed on different tax treatment for each; i.e., the $1,400 monthly obligation being taxable to Mr. Burns and the $500 monthly obligation being taxable to her.  The attorney advised petitioner that the determination of the tax consequences for these payments would be based on how the money was used, not on how the payment was labeled in the agreement.  On the basis of this assurance, petitioner signed the MSA.

The MSA was thereupon incorporated into and attached to the Petition for Dissolution of Marriage filed by the attorney with the Circuit Court of Escambia County, Florida (Circuit Court). On April 25, 2001, the Circuit Court adopted the MSA as the Final

Judgment of Dissolution of Marriage between petitioner and Mr. Burns.

Toward the end of 2001, Mr. Burns sent petitioner a letter stating that he was going to claim the $1,400 monthly payments as deductible alimony on his Federal income tax return and that petitioner would have to pay taxes on it, because the payments had been designated "alimony" in the MSA. Petitioner took Mr. Burns's letter to the attorney who drafted the MSA for explanation and assistance. The attorney refused to take any corrective action on petitioner's behalf and instead advised petitioner to "just sell the house and quit taking Bill's money".

During 2002, petitioner received $16,800 from Mr. Burns pursuant to the terms of the MSA; i.e., $1,400 per month, as the marital home remained unsold throughout 2002. The money was utilized by petitioner to pay Mr. Burns's portion of the debt service on the mortgage, taxes, insurance, maintenance, and repairs with respect to the marital home, and for veterinary care for the pets. Respondent determined that the $16,800 petitioner received from Mr. Burns was includible in her income under section 71(a).

Petitioner made a formal complaint with the Florida Bar against the attorney who drafted the MSA. In March 2006, the Grievance Committee of the Florida Bar recommended, on the basis of its review of the attorney's conduct in preparing the MSA and

later refusing to assist petitioner when requested, that the attorney receive an Admonishment for Minor Misconduct and be required to attend a continuing legal education program sponsored by the American Academy of Matrimonial Lawyers. The Grievance Committee's report concluded that the attorney had "failed to competently and diligently represent * * * [petitioner] by properly wording the language of the Marital Settlement Agreement so that the non-marital payments would not be taxed as income to her after the entry of the final judgment."

### Discussion

For Federal income tax purposes, an alimony or separate maintenance payment is any payment in cash if: (a) Such payment is received by, or on behalf of, a former spouse under a divorce or separation instrument;[2] (b) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under section 71 and not allowable as a deduction under section 215; (c) the payee spouse and the payor spouse are not members of the same household at the time the payment is made; and (d) there is no liability to make any such payment, or a substitute for such payments, in cash or

---

[2] A divorce or separation instrument means: (a) A decree of divorce or separate maintenance or any written instrument incident to such decree, (b) a written separation agreement, or (c) a decree (not described in (a)) requiring a spouse to make payments for the support or maintenance of the other spouse. Sec. 71(b)(2)(A)-(C).

property, after the death of the payee spouse. Sec. 71(b)(1)(A)-(D). The test under section 71(b)(1) is conjunctive; a payment is includible in income as alimony only if all four requirements of section 71(b)(1) are met. See Johnson v. Commissioner, T.C. Memo. 2006-116; Jaffe v. Commissioner, T.C. Memo. 1999-196. The characterization of the payments as "alimony" in the divorce or separation instrument does not affect their treatment for Federal income tax purposes; the test is whether the foregoing requirements are satisfied. Hoover v. Commissioner, 102 F.3d 842, 844 (6th Cir. 1996), affg. T.C. Memo. 1995-183.

It is undisputed that the MSA satisfies the definition of a divorce or separation instrument. See sec. 71(b)(2). The $1,400 monthly payments at issue herein were made in cash, the agreement pursuant to which the payments were made did not expressly designate that they were excludible from petitioner's income and nondeductible by Mr. Burns,[3] and petitioner and Mr. Burns were living separate and apart. Thus, the payments received by

---

[3] The qualified divorce instrument must contain a clear direction with regard to tax effect to negate alimony treatment if the payment would otherwise satisfy the requirements of sec. 71. See Richardson v. Commissioner, 125 F.3d 551 (7th Cir. 1997), affg. T.C. Memo. 1995-554; see also Estate of Goldman v. Commissioner, 112 T.C. 317 (1999) (finding clear and express direction from language of the agreement specifying that all property transfers in the settlement agreement, including a series of cash payments that would otherwise satisfy sec. 71(b)(1)'s requirements, were to be treated as "nontaxable" events under sec. 1041), affd. without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000).

petitioner from Mr. Burns satisfy the requirements of alimony set out in section 71(b)(1)(A), (B), and (C).  Therefore, the payments' status as alimony depends upon whether they satisfy section 71(b)(1)(D); i.e., whether Mr. Burns's liability to make the payments would have terminated in the event of petitioner's death.

Petitioner argues that the $16,800 received from Mr. Burns in 2002 was not taxable alimony but was part of the property settlement she and Mr. Burns agreed to regarding the marital home.  Petitioner argues that the MSA, as drafted by the attorney, did not conform to the terms to which she and Mr. Burns agreed.  Specifically, petitioner avers that she and Mr. Burns agreed that the $1,400 monthly payments she received from Mr. Burns until the marital home was sold were to be taxable to Mr. Burns.

The gravamen of respondent's argument is that the payments made to petitioner pursuant to the MSA were alimony because all the requirements of section 71(b)(1)(A)-(D) are satisfied.  Even if Mr. Burns's $1,400 monthly payments to petitioner were intended as part of a property settlement and were to be taxable to Mr. Burns, respondent argues, they are alimony for Federal income tax purposes as long as the requirements of section

71(b)(1)(A)-(D) are satisfied.[4]  Given the MSA's integration clause, respondent argues, unless the agreement is reformed by a court of competent jurisdiction so that it designates that the payments are not includible in gross income by petitioner and not allowable as a deduction by Mr. Burns, section 71(a) applies and the payments are income to petitioner.

We disagree with respondent that the payments satisfy the section 71(b)(1)(D) requirement that there be no liability to make any such payment for any period after the death of the payee spouse.  See Okerson v. Commissioner, 123 T.C. 258, 265 (2004). If the payor is liable for any payments after the payee spouse's death, none of the payments required under the divorce instrument are alimony.  Sec. 1.71-1T(b), Q&A-10, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984).  Whether such a post-death liability exists may be determined by the terms of the applicable instrument, or if the instrument is silent on the matter, by looking to State law.[5]  Morgan v. Commissioner, 309

_____

[4] In a departure from pre-1984 law, sec. 71(b) does not require:  (1) that deductible/includible alimony payments be periodic in nature, (2) that the amount to be paid must be fixed in the agreement, or (3) that the payments be intended for spousal maintenance and support.  Sec. 71(b) makes no distinction between transfers of cash meant to provide support or cash transfers meant to divide marital assets, so long as the payments meet the sec. 71(b) requirements.  See Estate of Goldman v. Commissioner, supra.

[5] Sec. 71, as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422(a), 98 Stat. 795, required that the
(continued...)

U.S. 78, 80 (1940); Kean v. Commissioner, T.C. Memo. 2003-163, affd. 407 F.3d 186 (3d Cir. 2005); Gilbert v. Commissioner, T.C. Memo. 2003-92, affd. sub nom. Hawley v. Commissioner, 94 Fed. Appx. 126 (3d Cir. 2004).

As the MSA does not explicitly address Mr. Burns's liability to make the $1,400 monthly payments in the event of petitioner's death, we must determine his post mortem obligations under Florida law. Under Florida law, where (as here) no minor children are involved, periodic payments incident to divorce are generally either alimony, which is in the nature of support and terminates on the death of either spouse by operation of law (absent express agreement to the contrary),[6] or part of property settlement rights, which are vested and survive the death of either former spouse[7]. See O'Malley v. Pan Am. Bank, N.A., 384 So. 2d 1258, 1260 (Fla. 1980). The description of the payments

_____

[5](...continued)
qualified divorce instrument specifically provide that the alimony obligation would cease at the payee's death. In the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1843(b), 100 Stat. 2853, Congress amended sec. 71(b)(1) to eliminate the specific writing requirement where alimony terminates at the payee's death or remarriage by operation of State law, effective for payments made under a divorce or separation instrument entered or executed after Dec. 31, 1984.

[6] See, e.g., Eagan v. Eagan, 392 So. 2d 988, 989 (Fla. Dist. Ct. App. 1981); Ford v. First Natl. Bank, 260 So. 2d 876, 877 (Fla. Dist. Ct. App. 1972).

[7] See, e.g., Scholem v. Scholem, 629 So. 2d 246 (Fla. Dist. Ct. App. 1993); Kuhnke v. Kuhnke, 556 So. 2d 1121 (Fla. Dist. Ct. App. 1989).

as alimony in a divorce or separation instrument is not conclusive. Fagan v. Lewis, 374 So. 2d 18, 20-21 (Fla. Dist. Ct. App. 1979) (citing Underwood v. Underwood, 64 So. 2d 281 (Fla. 1953)).

To determine whether periodic payments are alimony or a property settlement, Florida courts consider the intention of the parties as evidenced by the plain language of their agreement, the agreement's overall structure, the surrounding circumstances, and the agreement's purpose. Kuhnke v. Kuhnke, 556 So. 2d 1121 (Fla. Dist. Ct. App. 1989); see also Underwood v. Underwood, supra. Whether periodic payments constitute support (and therefore alimony) or a methodology for division of property generally depends upon whether the payments are given in return for a relinquishment of other valuable property rights by the recipient spouse. See McIntyre v. McIntyre, 824 So. 2d 206, 207 (Fla. Dist. Ct. App. 2002) (citing Petty v. Petty, 548 So. 2d 793, 795 (Fla. Dist. Ct. App. 1989); Draper v. Draper, 604 So. 2d 946, 947 (Fla. Dist. Ct. App. 1992)).

On the basis of Florida law, we conclude that the $1,400 monthly payments, considered in the context of the MSA as a whole, were part of a property settlement. The MSA provided that (i) the marital home was to be sold; (ii) Mr. Burns was to receive 40 percent of the net proceeds; and (iii) Mr. Burns was to pay $1,400 per month until the sale. The surrounding

circumstances demonstrate that this $1,400 per month was intended to service Mr. Burns's portion of the mortgage indebtedness and to cover his share of the maintenance, taxes, insurance, and similar expenses of the marital home (including sale preparation expenses) until such time as the marital home could be sold and the proceeds divided.[8]  As such, the payments were integral to the couple's division of property.  In addition, the payments were subject to a contingency other than the joint lives of the former spouses (i.e., "until such time as the marital home is sold"), which indicates that they were a property settlement rather than alimony.  See Underwood v. Underwood, supra at 288. Moreover, petitioner relinquished other valuable property rights in the MSA, which supports the same conclusion.  Indeed, on very similar facts, wherein periodic payments were to be made for the purpose of maintaining the marital residence until it was sold, the payments were held to be a property settlement rather than alimony.  Bockoven v. Bockoven, 444 So. 2d 30, 31-32 (Fla. Dist. Ct. App. 1983); see also Salomon v. Salomon, 196 So. 2d 111, 113 (Fla. 1967) (payments terminating upon wife's failure to own or reside in designated residence are not alimony but a property settlement).

---

[8] To the extent some portion of the monthly payment was intended for and in fact expended on the care of the couple's jointly owned pets, it is consistent with a property settlement rather than alimony.

Under Florida law, since the payments at issue were part of a property settlement, Mr. Burns's liability for them would have survived petitioner's death. See <u>Salsman v. Salsman</u>, 360 So. 2d 54, 55 (Fla. Dist. Ct. App. 1978) (under separation agreement, husband was obligated to make mortgage payments on marital home that was to become wife's sole property; husband's obligation to make mortgage payments survived wife's death); see also <u>McIntyre v. McIntyre</u>, <u>supra</u> at 207 (since payor spouse's liability for periodic payments was incurred in exchange for other property rights of payee spouse, payments were property settlement and liability for them survived payor spouse's death). Pursuant to Florida law, the MSA gave petitioner a vested property right in, and Mr. Burns had a corresponding liability to petitioner or her estate for, the payments of $1,400 per month until the marital home was sold. Consequently, Mr. Burns's liability to make the payments would not have been extinguished by petitioner's death but would have continued until the marital home was sold. As a result, the payments (totaling the $16,800 received by petitioner in 2002) fail to qualify as alimony because they do not satisfy section 71(b)(1)(D).

Because we hold in petitioner's favor on the foregoing basis, we do not address petitioner's contention that the MSA was the product of mistake insofar as it failed to designate that the $1,400 monthly payments were not includible in gross income under

section 71 and not allowable as a deduction under section 215 (as

provided in section 71(b)(1)(B)).  To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.