928 So.2d 364 (2006)
Sheila V. McCUTCHEON, Appellant,
v.
Thomas J. TRACY, III, Appellee.
No. 3D05-2637.
District Court of Appeal of Florida, Third District.
February 1, 2006.
Rehearing and Rehearing Denied May 22, 2006.
Lisa A. Baird, Miami, for appellant.
Bette E. Quiat; Jay M. Levy, Miami, for appellee.
Before SUAREZ and CORTIÑAS, JJ., and SCHWARTZ, Senior Judge.
Rehearing and Rehearing En Banc Denied May 22, 2006.
SCHWARTZ, Senior Judge.
Because the trial court's determination that the appellant was in material breach of the parties' freely-entered-into marital settlement agreement is supported by the record, the judgment below is affirmed on the authority of the principle that the "[p]rovisions of a property settlement agreement are interpreted by courts like any other contract," Bacardi v. Bacardi, 386 So.2d 1201, 1203 (Fla. 3d DCA 1980); Ospina-Baraya v. Heiligers, 909 So.2d 465 (Fla. 4th DCA 2005); Braswell v. Braswell, 881 So.2d 1193 (Fla. 3d DCA 2004); Coe v. Abdo, 790 So.2d 1276 (Fla. 4th DCA 2001), review denied, 817 So.2d 844 (Fla. 2002), and that a court may not deviate from the terms of a voluntary contract either to achieve what it might think is a more appropriate result or "to relieve one of the parties from the apparent hardship of an improvident bargain," Beach Resort Hotel Corp. v. Wieder, 79 So.2d 659, 663 (Fla.1955); Windham v. Windham, 152 Fla. 362, 11 So.2d 797 (1943), or ill-advised breach. See Clear Channel Metroplex, Inc. v. Sunbeam Television Corp., 922 So.2d 229 (Fla. 3d DCA 2005); Griffith v. Griffith, 860 So.2d 1069 (Fla. 1st DCA 2003); Wood/Fay Realty Group, Inc. v. New Aquarius Corp., 842 So.2d 914 (Fla. 3d DCA 2003); Feldman v. Kritch, 824 So.2d 274 (Fla. 4th DCA 2002); Pol v. Pol, 705 So.2d 51 (Fla. 3d DCA 1997), review denied, 717 So.2d 536 (Fla.1998); Nat'l Health Labs., Inc. v. Bailmar, Inc., 444 So.2d 1078 (Fla. 3d DCA 1984), review denied, 453 So.2d 43 (Fla.1984). The facts and reasoning of the recently decided case of Polezoes v. Bartlett, 921 So.2d 35 (Fla. 4th DCA 2006), seem particularly apt. See also Colucci v. Kar Kare Auto. Group, Inc., 918 So.2d 431 (Fla. 4th DCA 2006).
Affirmed.
*365 SUAREZ, J. (specially concurring).
I concur and write only to clarify some of the factual issues in this case. The evidence showed that both parties entered into the marital settlement agreement ("MSA") freely and with full advice of counsel. The MSA, among other things, unambiguously provides for the wife to obtain a commitment for financing to purchase the property in question forty-five (45) days after delivery of appraisal at a value of the appraisal less six percent (6%). It unambiguously provides that if the wife obtains a commitment, she shall be required to close no later than June 30, 2005. It additionally unambiguously states that the parties would agree to extensions relating to the dates in the MSA in the event of any third party's failure to comply with the June 30, 2005, deadline for closing.
After an extensive evidentiary hearing, the trial court found that the wife was in material breach of the MSA. The trial court's decision is supported by competent substantial evidence. The evidence showed that the wife obtained a loan commitment at eleven percent (11%) interest. She was unhappy with the commitment and attempted, at first, to have a straw person purchase the property for her, and then attempted to have her father purchase the property for her in order to obtain a better interest rate. The husband refused to enter into contracts with these two other parties as the MSA specifically provided that the wife would be the one to purchase the property under the agreed-upon terms. At the last minute, prior to the June 30, 2005, closing date, the wife attempted to obtain a loan commitment in her own name. The evidence showed that the institution which agreed to give the commitment could not close by June 30, 2005, due to the wife's delay in applying for the commitment. Therefore, the court correctly concluded that it was not the fault of the third party institution, but was the fault of the wife that the closing was not concluded on June 30, 2005. The trial court was correct in determining that, based on these facts, it did not have the authority to grant the wife's request for an extension to close and thereby rewrite the contract freely entered into by both parties.
CORTIÑAS, Judge (dissenting).
Because neither the legal process employed by the trial court nor its holding comports with equity, I must respectfully dissent.
As part of the equitable distribution of assets between the parties, the instant marital settlement agreement provided that the former wife could purchase the husband's interest in the former marital home after obtaining a timely loan commitment and closing no later than June 30, 2005. The agreement expressly contemplated the possibility of reasonable extensions of time due to potential delays caused by third parties' performances. Importantly, the agreement did not contemplate any consequences arising out of the former wife's failure to close by June 30, 2005. Instead, the agreement only addressed certain consequences that would occur if the former wife did not obtain a timely loan commitment, including her need to vacate the premises by June 30, 2005 and the former husband's right to sell the property to a third party.
The parties agree that the former wife obtained a timely loan commitment, but it was at an interest rate of more than eleven percent (11%) due to negative remarks in her credit report arising from various late mortgage payments during the course of the parties' marriage. In order to obtain a more favorable interest rate, the former wife made arrangements to purchase the property with a co-buyer who could secure *366 a much more favorable interest rate and still close by June 30, 2005. However, nine (9) days before June 30, 2005, the former husband refused to execute a contract for the sale of the property to the former wife and co-buyer, insisting that he would only sell to the former wife. The former wife also attempted to have her father purchase the property on her behalf, also at a more favorable interest rate, but the former husband refused this proposal as well.
On June 29, 2005, the former wife filed a motion requesting additional time to close on the property. The former husband responded by filing a motion to enforce the final judgment, claiming that the former wife was required to close by June 30, 2005 and, because she did not do so, she was required to vacate the property and sign away her interest in the property to the former husband. The trial court denied the former wife's request for additional time to close on the property, finding that "the delay in this case was because she didn't like her interest rate" and ordered her to vacate the premises "forthwith."
The trial court and the majority reason that the settlement agreement contemplated a closing by June 30, 2005 and, because the former wife had the opportunity to close by that date and did not do so, she breached the agreement, thereby forfeiting her right to purchase the former marital home.
As a court of equity, a family court is a "forum into which litigants may come on terms of equality, litigate their differences, have the equities for and against them balanced, and right and justice meted out to them." Baker v. Baker, 94 Fla. 1001, 114 So. 661 (1927). The former wife's request for additional time to close on the property arose from the former husband's refusal to allow the former wife to purchase the property through the assistance of third parties so that she may procure a more favorable interest rate. There is nothing in the marital settlement agreement that prohibited the former wife from assigning her rights under the agreement and, perhaps more importantly, there were no negative consequences to the former husband from any such assignment. As such, the sale proposed by the former wife would have accomplished the parties' intentions under the agreement. The trial court's and the majority's resolution of the matter frustrates those intentions and runs afoul of equitable principles.
It is well-settled that property settlement agreements should be upheld unless fraud, duress, deceit, coercion, or overreaching is alleged and proved. Underwood v. Underwood, 64 So.2d 281 (Fla. 1953); Miller v. Miller, 149 Fla. 722, 7 So.2d 9 (1942); Farkas v. Farkas, 426 So.2d 1213 (Fla. 4th DCA 1983); Zakoor v. Zakoor, 240 So.2d 193 (Fla. 4th DCA 1970). As such, in Forte v. Forte, 478 So.2d 460 (Fla. 3d DCA 1985), we held that a portion of a separation agreement and final judgment of dissolution granting the wife the option to purchase the marital home conferred a vested property right which was not subject to modification. See also Finston v. Finston, 160 Fla. 935, 37 So.2d 423 (1948); Neal v. Neal, 403 So.2d 621 (Fla. 5th DCA 1981). Thus, I agree with the majority that the parties' agreement, including the provisions for extensions of time, is not subject to modification.
However, in requesting additional time, the former wife was not seeking to rewrite the parties' agreement but, rather, obtain a brief extension of time to accomplish the parties' intentions. Indeed, the agreement provided for the possibility of extensions of time to close on the property. The former wife had hoped that the former husband would have been reasonable and allowed her to purchase the property *367 with the assistance of a third party so that she may obtain a lower interest rate. The trial court and the majority ignore these very real problems faced by real people in the real world. Before a judicial tribunal, a discussion concerning a high mortgage interest rate of eleven percent (11%) can be made to sound academic or, even worse, irrelevant. In the real world, an 11% interest rate on a mortgage determines whether one can meet monthly household expenses.
Here, the clear language of the marital settlement agreement did not include any consequences arising from the former wife's inability to close by June 30, 2005. The agreement expressly required the former wife to obtain a timely loan commitment and spelled out the consequences of her failing to do so. Those clauses, which formed the basis of relief by the trial court, are simply inapplicable as there is no dispute that the former wife obtained a prior loan commitment.
Recently, the Fourth District correctly distinguished deadlines in commercial contracts and contracts specifying that time is of the essence from deadlines in a marital settlement agreement. In Rose v. Ditto, 804 So.2d 351 (Fla. 4th DCA 2001), the Fourth District considered a former husband's two-day delay in making the first payment pursuant to the parties' settlement agreement and found the breach was not material. The Rose court noted that "the modern trend of decisions concerning brief delays by one party in the performance of a contract or conditions thereunder, in the absence of an express stipulation in the contract that time is of the essence, is not to treat such delays as a failure of a constructive condition discharging the other party unless performance on time was clearly an essential and vital part of the bargain." Rose, 804 So.2d at 352 (quoting National Exhibition Co. v. Ball, 139 So.2d 489 (Fla. 2d DCA 1962)).
In the instant case, the marital settlement agreement did not provide that time was of the essence. Nor did the agreement provide that the failure to close by June 30, 2005 would discharge the former husband's obligation to proceed with the sale of the property. As such, a delay of a few days to close on the property did not constitute a material breach of the marital settlement agreement and, certainly, did not eviscerate the former husband's legal obligation to sell the property to the former wife. See Rose, 804 So.2d at 353.
A brief extension of time would have yielded no negative consequences to the former husband and, more importantly, would have accomplished the parties' intentions under the agreement. Equity required nothing less.