974 So.2d 619 (2008)
Jason BIBI, Appellant,
v.
ROYAL HIDDEN COVE AT the POLO CLUB HOMEOWNERS ASSOCIATION, INC., a Florida not for profit corporation, Albert Eyal, Joy Meyers, Marise Rudnick, Jack Feldman, and Jeannie Fibus, Appellees.
No. 4007-291.
District Court of Appeal of Florida, Fourth District.
February 27, 2008.
*620 Ricardo A. Reyes of Tobin & Reyes, P.A., Boca Raton, and Nancy W. Gregoire of Bunnell, Woulfe, Kirschbaum, Keller, McIntyre, Gregoire & Klein, P.A., Ft. Lauderdale, for appellant.
Kara Berard Rockenbach of Gaunt, Pratt, Radford, Methe & Rockenbach, P.A., West Palm Beach, for appellees.
KLEIN, J.
Appellant sued his homeowner's association because of the failure of the association to approve his plans to build a home on his lot. After mediation the parties entered into a settlement agreement; however, that agreement resulted in a further dispute which is the subject of this appeal. We affirm.
The problem arose in the first place because the homeowner had to have approval from two different associations, his homeowner association, which is a party, and a master association, which is not a party. After becoming frustrated by his inability to start construction, either because of his delay in starting construction after approval, or failure to receive timely. approvals, he filed this suit against his association seeking declaratory relief as well as damages and other remedies.
At the request of his association, the homeowner agreed to participate in mediation, on the condition that the master association, which was not a party, would also participate. The master association attended part, but not all, of the mediation, during which the homeowner and his association entered into a settlement agreement that allowed the homeowner to continue his lawsuit if his plans were not approved by August 19, 2005. As it turned out, his association did approve his plans by that deadline; however, the master association did not approve the plans until several months later.
The issue before the trial court centered on the meaning of paragraph 7 as applied to the approval dates. The agreement was as follows:
* * *
2. Defendant Association agrees to call an emergency meeting of the Board of Director today, August 16, 2005, to approve Plaintiff's landscaping plan as presented by Plaintiff at mediation and by Association's property manager. The landscape plan is attached to this settlement agreement. Except for the landscaping plan, the Board has previously approved the balance of the construction plan on July 23, 2004.
3. If approved, the Association's property manager, Ken Soler will deliver said plans and seek approval from the Master Association at the Polo Club by Friday August 19, 2005.
4. If the landscaping plans and construction plans are approved by the defendant Association and the Master Association, Plaintiff will have six months *621 from August 19, 2005 to seek governmental approval and commence construction.
5. If Plaintiff fails to obtain approval and fails to commence construction within six months, except for future acts of God, approval is permanently and automatically revoked. In such an event, the defendant Association will not have any obligation to approve Plaintiffs' plans again.
6. Upon receipt of confirmation from the Defendant Association and the Master Association that the landscaping plans and construction plans have been approved, and Plaintiff is approved by the Association to commence construction, the parties shall submit a stipulation to dismiss the lawsuit with prejudice with each party to bear their own attorneys fees and costs.
7. If both the defendant Association and the Master Association do not provide approvals as specified herein by August 19, 2005, either party may void this settlement agreement and proceed with the lawsuit.

8. Defendant Association would not be opposed to a reduction in square footage of the guest house. However Defendant Association must receive, review and approval all revisions to architectural building plans, which may be submitted simultaneously with request for governmental approval.
The homeowner was able to build his home, but he took the position that, because both approvals were not obtained by the August 19 deadline, he was not required to dismiss his lawsuit for damages. The trial court found the agreement unambiguous and that it permitted the homeowner to continue with his lawsuit only if, as the agreement provided: "both the . . . Association and the Master Association failed to provide approval by August 19, 2005." In other words, if only one association failed to provide approval then the homeowner lost his right to continue his suit.
The homeowner argues that the intent of the agreement as a whole was to require approvals of both associations by August 19, because obtaining the approval of only one would have been of no benefit to him. On the other hand, the association points out that the master association was not a party to the lawsuit and the association had no control over the master association.
The dissent would change paragraph 7 from "if both the defendant Association and the Master Association do not provide approvals" to "if either the defendant Association or the Master Association do not provide approvals." A court, however, may not change the terms of a contract to achieve what it might think is a more appropriate result. McCutcheon v. Tracy, 928 So.2d 364 (Fla. 3d DCA 2006). Because the condition of both failing to approve did not occur, the trial court did not err in interpreting the agreement in favor of the association.
Affirmed.
DAMOORGIAN, J., concurs.
HAZOURI, J., dissents with opinion.
HAZOURI, J., dissenting.
I respectfully dissent. I find that paragraph 7 of the mediation agreement in isolation and in conjunction with the overall intent of the mediation agreement to be unambiguous and provides that the appellant has the option to void the settlement agreement and proceed with the lawsuit on damages. The fact that the Master Association was not a part of the lawsuit is of little moment. Clearly the Homeowner's Association could not bind the Master Association since the Master Association was *622 not a signatory to the mediation agreement; however, it is clear to me that the appellant needed to have both the approval of the Homeowner's Association and the Master Association in order to proceed with the building of his home.
Paragraph 3 of the mediation agreement clearly contemplates that the Homeowner's Association will seek the approval of the Master Association by August 19, 2005. In paragraph 4 of the agreement, the appellant will then have six months from August 19, 2005, to seek governmental approval and commence the construction. The date of August 19, 2005, is the triggering time period for the appellant to be able to proceed. One has to wonder why any triggering date would be in the agreement if it did not contemplate approval by both the Homeowner's Association and the Master Association. In paragraph 6 of the agreement, again there is a reference to obtaining both the Homeowner's Association and the Master Association's approval of landscaping and construction plans.
Finally, paragraph 7 standing alone conveys the clear statement that if both the Homeowner's Association and the Master Association do not approve the plans by August 19, 2005, either, party may void the settlement and proceed with a lawsuit. To read paragraph 7 to mean that the appellant could void this settlement and proceed with a lawsuit only if both the Homeowner's Association and the Master Association do not provide approvals seems to me to turn this paragraph on its head and at best is a very strained interpretation.
The Homeowner's Association approved the plans but the Master Association did not. So it was necessary to have approval from both associations by August 19, 2005, in order to proceed. August 19, 2005, would be the date from which the six month time period for commencing construction would begin to run. Failure to have the approval of both associations would be the only basis for which the appellant would be able to proceed with his lawsuit for damages.
Contrary to the assertion by the majority that the dissent seeks to rewrite the agreement, I am simply advocating a plain reading of paragraph 7. In order for the majority to come to its conclusion it must read paragraph 7 to provide "if only one of the associations provides approval" then the appellant may not proceed with a lawsuit. If the majority's reading of the paragraph is correct, then the Homeowner's Association could deny approval of the plans and the Master Association could approve them and the appellant still could not proceed with his damages claim. To read paragraph 7 in this manner would make the entire mediation with the Homeowner's Association a futile exercise. I would therefore reverse and remand so that the appellant could proceed with his claim for damages.