SHEPHERD, J.
This is an appeal from an order voiding a provision of a mediated marital settlement agreement as a result of changes in the economy. Based upon the bedrock principle of contract law — applicable as well to marital settlement agreements— that bad deals are as enforceable in the law as good deals, we reverse the order under review.
The mediated marital settlement agreement in this case was signed and the final judgment of dissolution entered on August 8, 2008. The paragraph of the agreement which gives rise to this action reads as follows:
18. REAL PROPERTY:
(A)The parties are owners as tenants by the entirety real property located at: ... and referred to as the marital residence. The approximately [sic] market value is $950,000.00 and there is currently one mortgage on the home of approximately $608,000.00.
(B) In consideration the Husband shall pay to the Wife the sum of $185,000.00 within sixty (60) days from the execution of this agreement.
(C) Said refinancing shall take place within 120 days from the execution of this agreement. The Husband shall be solely responsible for all of the expenses associated with the refinancing.
(C) [sic] Simultaneously with the execution of the agreement the Wife shall execute and deliver unto the Husband, a Quil^Claim Deed transferring all of her right, title and interest in and to the above described property together with all fixtures located therein to him and said property shall thereupon become his sole property and he shall be entitled to a quiet and peaceful enjoyment of said property including any and all utility deposits in connection therewith. Said Quit-Claim Deed shall be held in escrow by the Husband’s counsel to be given to the closing agent at the time of the refinancing.
(D) The Husband shall indemnify and hold harmless the Wife from any and all property taxes, assessments, insurance payments, repair expenses, maintenance expenses, utility bills and all other expenses concerning said real property after the Wife vacates the marital home.
(E) If the Husband fails to refinance the home to release to the Wife within 120 days, then the home shall be immediately placed for sale with a licensed realtor to be agreed upon solely by Husband. The net proceeds of the sale shall be the sole property of the Husband.
(F) The parties agree that the Wife shall be able to reside in the marital residence with the minor child once the Temporary Certificate of Occupancy has been issued by the city of Palmetto Bay. While the Wife is occupying the marital *555 home, she shall be responsible for the utilities during the period of time of her occupancy. The marital home is to be returned to the Husband upon the conclusion of the occupancy period absent normal wear and- tear. The Husband shall give to the Wife reasonable notice when he will be going to the marital home and access to the home cannot be unreasonably denied.
(G) The Wife shall vacate the marital home thirty days after she receives the $185,000.00 as her equalization payment for the marital home and the $5,500.00 in child support arrears minus one half of the net proceeds from the sale of the mobile home.
Although not a candidate for a future style manual, the agreement is unambiguous. Subsection (C) obligated the former wife to execute and deposit a quitclaim deed in escrow with the former husband’s counsel upon execution of the marital settlement agreement, which she did. Subsection (B) required the former husband to pay the former wife an “equalization payment” of $185,000 (subject to minor adjustments) within sixty days of the date the agreement was executed. Subsection (C) requires the former husband to refinance the home within 120 days of the agreement’s execution. The plain language of the agreement establishes that its object was (1) to bring about an unconditional payment of $185,000 to the former wife; (2) achieve an ownership transfer of the property to the former husband; and (3) relieve the former wife of any further financial responsibility for the property contemporaneously with the transfer. Notably, the couple, in paragraph (E) of the agreement, anticipated the possibility of one future circumstance, the failure of the former husband to refinance the property within 120 days of the execution of the agreement. In that circumstance, the parties agreed the property immediately would be placed for sale, with the net proceeds going to the former husband. It cannot be gainsaid that the couple’s mutual understanding of the value of the property influenced the negotiation.
Shortly after August 8, 2008, and apparently unanticipated by the former husband, the Florida real estate market entered into one of its periodic downward adjustments, for which it has become famous since the time of the Great Depression. The former husband neither paid his former wife the approximate $185,000 equalization payment nor tried to refinance the house. Instead, he unilaterally sought to list the house for sale with a realtor, but the former wife, who has lived in the home with the parties’ minor child, has not cooperated.
Rather, the former wife filed a motion for contempt and enforcement of paragraph eighteen, specifically for the payment of $185,000 and the refinancing of the house. The former husband filed a motion requesting the trial court to order the former -wife to cooperate with the sale of the home pursuant to the parties’ agreement. In his motion, the former husband stated, “Due to the real estate market conditions, the former husband has not been able to refinance the former marital home solely under his name and thus has not been able to pay the monies owed to the former wife pursuant to the parties’ agreement.”
After hearing arguments on the motions, the trial court declared paragraph eighteen “to be an impossibility of performance due to changes in the economy and therefore void.” The court further ordered the former wife to vacate the home, that the home be appraised, and finally that it immediately be listed for sale with the net proceeds divided between the parties. The former wife appeals.
*556 The former husband advances the preliminary complaint that the former wife has not brought forward an adequate appellate record for our review. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979). He complains specifically that the record lacks a transcript or approved statement of the proceedings from which emanated the orders under review. See Fla. R.App. P. 9.200(b). The record in this case is sparse. The absence of a transcript of a hearing can be fatal to an appellant, especially if the hearing was an evidentiary hearing. However, it is not a rule absolute in an appellate proceeding that the appellant must present a transcript of the proceeding below. For example, an appellate court may, as we now do, reverse a trial court order if there exists reversible error on the face of the order or judgment. See Casella v. Casella, 569 So.2d 848, 849 (Fla. 4th DCA 1990) (finding reversible error on the face of the amended judgment alone). In this case, we find the trial court reversibly erred by voiding paragraph eighteen of the mediated marital settlement agreement for impossibility of performance due to changes in the economy.
A marital settlement agreement entered into by the parties and ratified by a final judgment is a contract, subject to the laws of contract. See Andersen Windows, Inc. v. Hochberg, 997 So.2d 1212, 1213 (Fla. 3d DCA 2008); Delissio v. Delissio, 821 So.2d 350, 353 (Fla. 1st DCA 2002). Because of the central importance placed upon the enforceability of contracts in our culture, the defense of impossibility (and its cousins, impracticability and frustration of purpose) must therefore be applied with great caution if the contingency was foreseeable at the inception of the agreement. Home Design Ctr.-Joint Venture v. Cnty. Appliances of Naples, Inc., 563 So.2d 767, 769-70 (Fla. 2d DCA 1990). As further developed by Professor Willi-ston in his treatise,
The important question [in an impossibility inquiry] is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. If so, the risk should not fairly be thrown upon the promisor.
6 Williston, Contracts (Rev. ed.) § 1931 (1938).
In this case, the decline in the real estate market shortly after the Former Husband signed the marital settlement agreement, while marked and unfortunate, was not the sort of unanticipated circumstance that falls within the purview of the doctrine of impossibility. Economic downturns and other market shifts do not truly constitute unanticipated circumstances in a market-based economy. The assignment of this risk before a final closing of the transaction between the parties was therefore among those for which a reasonably prudent person, represented by counsel, might have provided. A trial court is not authorized to intervene to ameliorate a hardship that a promisor, such as the former husband in this case, could have thus avoided. McCutcheon v. Tracy, 928 So.2d 364, 364 (Fla. 3d DCA 2006) (“[A] court may not deviate from the terms of a voluntary contract either to achieve what it might think is a more appropriate result or ‘to relieve the parties from the apparent hardship of an improvident bargain.’ ”) (quoting Beach Resort Hotel Corp. v. Wieder, 79 So.2d 659, 663 (Fla.1955)).
In addition, the former husband cannot sidestep the consequence of his failure to include such a provision with the argument that the lack of such a provision renders this otherwise unambiguous agreement ambiguous. See Life Ins. Co. of N. Am. v. *557 Cichowlas, 659 So.2d 1333, 1338 (Fla. 4th DCA 1995) (“[W]here a contract is simply silent as to a particular matter, that is, its language neither expressly nor by reasonable implication indicates that the parties intended to contract with respect to the matter, the court should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted.”). The former husband is bound to the agreement he struck.
Accordingly, the trial court was obligated to enforce the mediated marital settlement agreement as voluntarily agreed upon by the parties. See McCutcheon, 928 So.2d at 364. The former wife is entitled to a judgment against the former husband for the $185,000 equalization payment after any adjustments required by the marital settlement agreement.[1] If the marital residence has a temporary certificate of occupancy, the former wife and child shall be entitled to occupy the house consistent with the terms of the marital settlement agreement until such time as the equalization amount is paid or the house is sold. The marital residence should be listed for sale with a real estate agent chosen by the former husband, who shall be contractually entitled to receive the net proceeds of the sale, as provided in the marital settlement agreement.
Reversed and remanded for further proceedings consistent with this opinion.

. The former husband’s agreement to pay is not enforceable by contempt at this stage of the proceeding. See Braswell v. Braswell, 881 So.2d 1193, 1198 (Fla. 3d DCA 2004). However, if the former wife occupies the marital home, she must pay the utilities as required by the agreement and, of course, cooperate in any effort to sell the property.