# Third District Court of Appeal

## State of Florida

Opinion filed August 16, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2180
Lower Tribunal No. 19-836
_____

**Frances Haskin, etc.,**
Appellant,

vs.

**Michael Haskin, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Bertila Soto, Judge.

The Billbrough Firm, and G. Bart Billbrough; Paul M. Cowan & Associates, P.A., and Paul M. Cowan and Manuel A. Celaya, for appellant.

Lee & Amtzis, P.L., and Eric Lee (Boca Raton), for appellees.

Before HENDON, GORDO and BOKOR, JJ.

BOKOR, J.

Frances Haskin[1] appeals the trial court's order granting partial summary judgment in favor of Eugene Haskin's children from his first marriage: Michael Haskin, Lee Haskin, and Cindy Henick (collectively, the "Haskin children"). The salient issue presented to the trial court, and the one which Frances claims the trial court got wrong, involves an issue of interpretation of a provision of the marital settlement agreement between Eugene and his ex-wife, Judith Haskin. Frances takes issue with the trial court's conclusion that the plain language of the marital settlement agreement permitted Eugene to add additional offspring as pro rata beneficiaries of 50% of his estate, but it also prevented Eugene from entirely removing the Haskin children as beneficiaries of his will. Frances argues that the marital settlement agreement only required that Eugene add the Haskin children in the initial will, but that he was free to amend the will and remove the Haskin children.

A marital settlement agreement is just that—a settlement, examined under the rules of contract. The parties could have bargained for and split

---

[1] Frances appeals in her individual capacity, as trustee of the Eugene Haskin and Frances Haskin Revocable Trust, and as personal representative of Eugene Haskin's estate. We have jurisdiction over an order that finally determines "a right or obligation of an interested person as defined in the Florida Probate Code," including an order that grants "entitlement, or determine[s] the persons to whom distribution should be made." Fla. R. App. P. 9.170(b)(5).

assets however they felt appropriate. Here, the bargain evinced by the plain language requires the Haskin children to remain as beneficiaries. Accordingly, as more fully explained herein, we agree with the trial court's analysis of the marital settlement agreement and affirm the order on appeal.

## BACKGROUND

In 1953, Eugene married his first wife, Judith, in New Jersey. Together, they had four children: Cindy, Lee, Richard, and Michael. In 1969, Judith filed for divorce. A year later, Eugene and Judith entered into a marital settlement agreement, which was approved and incorporated into a New Jersey divorce judgment. In 2000, the divorce judgment was domesticated in Florida.

The marital settlement agreement provides, in relevant part:

ARTICLE XIII – WILLS

. . . .

B. The Husband agrees to promptly make and execute a Last Will and Testament containing such provisions as he may deem proper except that **such Will shall contain a provision providing for the distribution of not less than 50% of his net estate to be divided equally among all of the Husband's then living children.** The term "children" as used hereunder shall include both natural and adopted children of the Husband. **The provisions of this article are not to be deemed to require the Husband to include as such beneficiaries any children other than the children of the Husband and Wife but the provisions hereof permit such inclusion at the option of the Husband.**

3

(Emphasis added).

Following his divorce from Judith, Eugene married Frances, and together they had one child. Years later, in 2014, Eugene executed the operative will, revoking all previous wills, testaments, and codicils and disinheriting Cindy, Lee, and Michael as well as their lineal descendants.[2]

Following Eugene's death in 2017, the Haskin children filed an action below for breach of contract and specific performance, asserting they were the intended beneficiaries of the marital settlement agreement and that Eugene's will failed to satisfy the requirement of Article XIII, paragraph B of the marital settlement agreement. Relying on the language in the provision and the fact Eugene breached the martial settlement agreement, the Haskin children moved for partial summary judgment. The trial court granted the motion, finding that the Haskin children were entitled to a share of Eugene's estate and specific performance based on Eugene's breach.

On appeal, Frances argues that the marital settlement agreement only required Eugene to add the Haskin children to the will but was silent as to Eugene's ability to remove the children from any subsequent will or amendment. However, the plain language of the sentence at issue,

---

[2] The operative will didn't disinherit Richard, one of the four children of Eugene and Frances, who is not a party to this appeal.

4

particularly in the context of the entire operative paragraph of the marital settlement agreement, leads to the same conclusion reached by the trial court.

We interpret a marital settlement agreement like any other contract. See Ferguson v. Ferguson, 54 So. 3d 553, 556 (Fla. 3d DCA 2011) ("A marital settlement agreement entered into by the parties . . . is a contract, subject to the laws of contract."). Significantly, "[w]e give terms contained in such agreements their plain meaning and do not disturb them unless those terms are ambiguous." Fendrich v. Murphy, 353 So. 3d 1194, 1196 (Fla. 4th DCA 2023); see Pol v. Pol, 705 So. 2d 51, 53 (Fla. 3d DCA 1997) ("[A] court cannot rewrite the clear and unambiguous contract terms of a voluntary contract."); see also City of Pompano Beach v. Beatty, 222 So. 3d 598, 600 n.1 (Fla. 4th DCA 2017) ("[A] true ambiguity exists only when the language at issue 'is reasonably susceptible to more than one interpretation.'") (citations omitted).[3]

---

[3] Frances claims New Jersey law applies in interpreting the contract. We need not decide the issue, because Florida and New Jersey apply the same relevant principles of contract interpretation. See, e.g., Barila v. Bd. of Educ. of Cliffside Park, 230 A.3d 243, 255 (N.J. 2020) ("The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'") (citations omitted); see also Washington Constr. Co. v. Spinella, 84

We determine no ambiguity exists and the provision at issue can only lead to one interpretation—fifty percent of Eugene's estate must be divided equally among Cindy, Lee, Richard, and Michael.  That the provision contains no express language of irrevocability doesn't change this analysis. That isn't to say that the parties couldn't agree to a provision whereby the settlor would have been free to amend subsequent wills; they just didn't do that here.  We know that because we are required to read the sentence at issue within the context of the entire agreement.  See People's Tr. Ins. Co. v. Lamolli, 352 So. 3d 890, 895 (Fla. 4th DCA 2022) ("'[R]ules of construction require that no word or part of an agreement is to be treated as a redundancy or surplusage if any meaning, reasonable and consistent with other parts, can be given to it[.]'") (citation omitted); see also Famiglio v. Famiglio, 279 So. 3d 736, 740 (Fla. 2d DCA 2019) ("Provisions in a contract should be construed in the context of the entire agreement and read in a way that gives effect to all of the contract's provisions.  Courts should not employ an interpretation of a contractual provision that would lead to an absurd result.") (citations and internal quotations omitted).

---

A.2d 617, 619 (N.J. 1951) (explaining that all parts of a writing shall, if possible, be given effect).

After the sentence requiring Eugene to execute a will splitting 50% of his estate equally among his four children with Judith, the agreement explicitly contemplates the possibility of Eugene having future offspring. Accordingly, the parties contracted for the fact that additional, future offspring could be added to the will at Eugene's discretion, entitled to split the 50% share pro rata with the existing children. If we were to agree with Frances' interpretation, we would be committing two sins of contract interpretation—creating an ambiguity where none exists and rendering the provision allowing Eugene to split the 50% share with future children meaningless. In other words, if Eugene had the unfettered right to amend his will and remove Judith's children, that sentence allowing additional children to be added would be, at best, mere surplusage, or, more likely, create an ambiguity where none exists. On the other hand, the trial court's interpretation gives meaning to every portion of the paragraph at issue in line with the plain and unambiguous text.

Affirmed.

GORDO, J., concurs.

HENDON, J., dissenting.

I respectfully dissent from the majority's affirmance of the trial court's order granting partial summary judgment in favor of three of Eugene Haskin's children from his first marriage with Judith Haskin ("Judith")—Michael Haskin, Lee Haskin, and Cindy Henick (collectively, "Plaintiffs").

I.    **FACTS AND PROCEDURAL HISTORY**

   **A. Eugene and his Former Wife's Marriage**

Eugene and Judith married in 1953 in New Jersey, producing four children during their marriage—Cindy, Lee, Richard, and Michael—who were still minors when the Former Wife filed for divorce in 1969 in New Jersey.    On April 9, 1970, Eugene and Judith entered into a marital settlement agreement in New Jersey[4] ("Settlement Agreement"), which contained the following relevant provision:

> ARTICLE XIII – WILLS
>
> . . . .
>
> B.  The Husband agrees to promptly make and execute a Last Will and Testament containing such provisions as he may deem proper except that such Will shall contain a provision providing for the distribution of not less than 50% of his net estate

_____

[4] Cindy is referred to as Cynthia in the Settlement Agreement.

8

to be divided equally among all of the Husband's then living children. The term "children" as used hereunder shall include both natural and adopted children of the Husband. The provisions of this article are not to be deemed to require the Husband to include as such beneficiaries any children other than the children of the Husband and Wife but the provisions hereof permit such inclusion at the option of the Husband.

("Article XIII(B)").

On August 26, 1970, the New Jersey court entered a Divorce Judgment, incorporating Eugene and Judith's Settlement Agreement. In 2000, the New Jersey Divorce Judgment was domesticated in Florida.

## B. Eugene and France's Relationship and Marriage

Eugene and Frances married shortly after Eugene and Judith's divorce was finalized. However, prior to Eugene entering in the Settlement Agreement on April 9, 1970, Frances gave birth to Eugene's "natural" child, Eric, in early March 1970. Eugene also adopted Frances's son, Gregory, from her prior marriage.

## C. Eugene Disinherits the Plaintiffs in 2014

On October 30, 2014, Eugene, who was then eighty-five years old, and Frances executed the Eugene Haskin & Frances Haskin Revocable Trust ("Trust"), transferring certain assets into the Trust. On that same date, Eugene also executed his Last Will and Testament ("Will"), appointing Frances as his personal representative; revoking all previous wills,

9

testaments, and codicils; and providing that his estate would be inherited by the Trust. Both the Trust and the Will recognized that Eugene has four children from his prior marriage—Cindy, Lee, Richard, and Michael—but that no provision was being made for Cindy, Lee, Michael, and their lineal descendants.

### D. The Underlying Actions

Following Eugene's death in January 2017, Frances, as Eugene's personal representative, filed a probate action, seeking to probate Eugene's 2014 Will. The Plaintiffs filed a separate action in the civil division, which was later consolidated into the probate action. The Plaintiffs' operative complaint named as defendants Frances, individually, as trustee of the Trust, and as Eugene's personal representative, Richard, Eric, and Gregory (collectively, "Defendants").[5] The Plaintiffs asserted, among other things, that they were third party beneficiaries of the Settlement Agreement, and that Eugene failed to satisfy the requirement of Article XIII(B) of the Settlement Agreement. The Plaintiffs asserted several counts, including breach of the Settlement Agreement, seeking monetary damages and a constructive trust over assets transferred into the Trust.

During the litigation, the Plaintiffs filed a motion for partial summary

---

[5] The operative complaint was also filed against several nominal defendants.

judgment, asserting they are entitled to partial summary judgment for liability as to their breach of contract claims. The parties agreed that Article XIII(B) of the Settlement Agreement was unambiguous, but they attributed different meanings to the provision. In essence, the Plaintiffs asserted that once Eugene executed a will that satisfied Article XIII(B), he could not revoke that will and execute a subsequent will. As such, the Plaintiffs and Richard were each entitled to 12.5% of Eugene's estate. In contrast, Frances asserted that Eugene was not prohibited from later revoking a will that he executed to satisfy Article XIII(B), and therefore, he did not breach the Settlement Agreement when he executed the 2014 Will that disinherited the Plaintiffs.

The trial court conducted a hearing on the Plaintiffs' motion for partial summary judgment, ruling in favor of the Plaintiffs. In its written order, the trial court found that pursuant to the Settlement Agreement, Eugene was required to include a provision in his will "providing for the distribution of not less than 50% of his net estate to be divided equally among all of the Husband's then living children." The trial court's order further provides that Eugene breached the Settlement Agreement because the 2014 Will did not include such a provision, and "[t]here is no factual issue created as to whether the provision in the [Settlement Agreement] was revocable." Finally, the trial court ruled as follows:

11

Plaintiffs are entitled to specific performance of the [Settlement Agreement], as incorporated in the New Jersey Divorce Judgment and later domesticated in Florida. The Plaintiffs are entitled to specific performance of the [Settlement Agreement]; the Plaintiffs are each entitled to 12.5% of Eugene's net Estate. Pursuant to Fla. Stat. § 733.707, the assets Eugene transferred to the Trust (listed on Schedule 2.2) are also subject to the Plaintiffs' claims against the Estate. Finally, this Court also imposes a constructive trust over the separate property of Eugene transferred to the Trust listed on Schedule 2.2.

The Defendants filed a motion for rehearing. Among other things, they argued that each of Eugene's children from his first marriage were not entitled to 12.5% of the Trust corpus because at the time of Eugene's death, he had six living children. The Defendants further argued that the trial court had not addressed the motion for determination of which state's law controlled the contractual issues raised in this case.

Frances, individually, as trustee of the Trust, and as personal representative of Eugene's estate, appealed the October 5, 2021 order granting the Plaintiffs' motion for partial summary judgment. This Court granted Frances's unopposed motion to hold the appeal in abeyance pending disposition of the motion for rehearing filed in lower tribunal.

Following a hearing, the trial court entered an order denying the Defendants' motion for rehearing, and in the order, the trial court also denied the Defendants' Motion for Order Determining Choice of Law filed on September 7, 2021, stating that Florida law applies to all claims and

defenses in this matter. Thereafter, this Court temporarily stayed the trial court's proceedings pending further order of this Court.

## II. ANALYSIS

The majority disagrees with Frances's contention on appeal that the trial court erred by granting partial summary judgment in favor of the Plaintiffs on their breach of contract claims. As I agree with Frances's contention, I would reverse the order under review as set forth in this dissent.

The Settlement Agreement entered into by Eugene and Judith, which was incorporated into the Divorce Judgment, is a contract. See Ferguson v. Ferguson, 54 So. 3d 553, 556 (Fla. 3d DCA 2011) ("A marital settlement agreement entered into by the parties and ratified by a final judgment is a contract, subject to the laws of contract."). "Contracts are voluntary undertakings, and contracting parties are free to bargain for—and specify— the terms and conditions of their agreement." Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc., 145 So. 3d 989, 993 (Fla. 4th DCA 2014). Further, "a court cannot rewrite the clear and unambiguous contract terms of a voluntary contract." Pol v. Pol, 705 So. 51, 53 (Fla. 3d DCA 1997); see also Int'l Expositions, Inc. v. City of Miami Beach, 274 So. 2d 29, 30-31 (Fla. 3d DCA 1973) ("The law is quite clear that courts may not rewrite, alter, or add to the terms of a written agreement between the parties and may not

substitute their judgment for that of the parties in order to relieve one from an alleged hardship of an improvident bargain.").

In the underlying action, the parties argued, among other things, that Article XIII(B) of the Divorce Agreement was unambiguous, but they ascribed different meanings to Article XIII(B). See City of Pompano Beach, Fla. v. Beatty, 222 So. 3d 598, 600 n.1 (Fla. 4th DCA 2017) ("Nor is the provision ambiguous simply because the litigants ascribe different meanings to the language employed—something that occurs every time the interpretation of a contract is litigated. . . . But a true ambiguity exists only when the language at issue is reasonably susceptible to more than one interpretation.") (internal quotation marks and citations omitted). As stated earlier, the Plaintiffs asserted that once Eugene executed a will that satisfied Article XIII(B), he could not revoke that will and execute a subsequent will. As such, the Plaintiffs asserted that they, along with Richard, were each entitled to 12.5% of Eugene's estate. In contrast, Frances asserted that Eugene was not prohibited from later revoking a will that he executed to satisfy Article XIII(B), and therefore, he did not breach the Settlement Agreement when he executed the 2014 Will that did not provide for the Plaintiffs.

The provision set forth in Article XIII(B) merely required Eugene to "make and execute" a will that satisfied the provision. Moreover, Article

XIII(B) did not require Eugene to **maintain** such a will until the day he died or that a will that complied with Article XIII(B) was irrevocable. Clearly, if that is what Eugene and Judith wanted, they easily could have included such a provision in their Settlement Agreement. The Settlement Agreement reflects that Eugene and Judith included provisions that protected Judith and/or her children with Eugene in the future. For example, Eugene and Judith contemplated additional child support and alimony in the event that Eugene's income increased, including a formula to compute the increased child support and alimony. Further, the provision relating to Eugene's obligation to maintain life insurance reflects the life insurance policy must designate Judith as an "**irrevocable beneficiary**" unless certain future events occur. Eugene and Judith gave great thought to the provisions in their Settlement Agreement, and chose not to include a provision prohibiting Eugene from later revoking or changing a will that he made and executed to satisfy Article XIII(B).

The majority opinion argues that based on its de novo interpretation of Article XIII(B), as a whole, fifty percent of Eugene's estate must be divided equally between his four children with Judith—Cindy, Lee, Richard, and Michael. More specifically, the majority asserts:

> After the sentence requiring Eugene to execute a will splitting 50% of his estate equally among his four children with Judith, the

15

agreement explicitly contemplates the possibility of Eugene having future offspring. Accordingly, the parties contracted for the fact that additional, future offspring could be added to the will at Eugene's discretion, entitled to split the 50% share pro rata with the existing children. If we were to agree with Frances's interpretation, we would be committing two sins of contract interpretation—creating an ambiguity where none exists and rendering the provision allowing Eugene to split the 50% share with future children meaningless. In other words, if Eugene had the unfettered right to amend his will, and remove Judith's children, that sentence allowing additional children to be added would be, at best, mere surplusage, or, more likely, create an ambiguity where none exists.

I disagree with the majority's interpretation of Article XIII(B). In the first sentence of the Settlement Agreement, Eugene was only required to "promptly **make and execute** a Last Will and Testament containing such provisions as he may deem proper except that such Will shall contain a provisions providing for the distribution of not less than 50% of his net estate to be divided equally among all of the **Husband's then living children**." (emphasis added). He was not required to "make, execute, and **maintain**," such a will. The majority argues that Eugene was required to execute a will splitting 50% of his estate equally among his four children with Judith. The majority's interpretation ignores the second sentence of Article XIII(B) which defines "children" as "includ[ing] both natural and adopted children of the Husband." Thus, based on the facts of this case—specifically, Frances giving birth to Eugene's "natural" child, Eric, in early March 1970, Eugene

16

had a least five living children when he executed the Settlement Agreement in April 1970, which was incorporated in the New Jersey Divorce Judgment.[6]

Next, the majority also focuses on the third (and last) sentence of Article XIII(B), which provides: "The provisions of this article are not to be deemed to require the Husband to include as such beneficiaries any children other than the children of the Husband and Wife but the provisions hereof permit such inclusion at the option of the Husband." At the very least, the third sentence is at odds with the first and second sentences of Article VIII(B). Based on the definition of "children," Eugene was <u>required</u> to include Eric in his initial will as Eric is his "natural" child. However, under the third sentence, Eugene only had to include his and Judith's four children but could include Eric. Nonetheless, the third sentence does not somehow require Eugene to **maintain** the will that he "promptly ma[de] and execute[d]" following his divorce from Judith that satisfied Article XIII(B). Basically, after he made and executed the initial will, there was nothing in the Settlement Agreement that stopped him from later revoking that initial will and entering into a subsequent will with provisions of his choosing. Thus, based on the above analysis, Eugene did not breach Article XIII(B) of the Settlement Agreement by

---

[6] At some point, Eugene also adopted Frances's son from her first marriage, Gregory, but is unclear when this occurred.

17

subsequently executing the 2014 Will disinheriting three of his and Judith's children.

Accordingly, I would reverse the trial court's order granting the Plaintiffs' motion for partial summary judgment as to their breach of contract claims and remanded for further proceedings consistent with this dissent.