771 So.2d 594 (2000)
Fernando Arias VARGAS, et al., Appellants,
v.
Carolina Arias VARGAS, et al., Appellees.
Nos. 3D00-1287, 3D00-613, 3D00-1213.
District Court of Appeal of Florida, Third District.
November 15, 2000.
*595 Robert P. Frankel, and Philippe Lieberman, Miami, for appellants.
Alan S. Fine, Coral Gables, and Edward A. Licitra, North Miami Beach, for appellees.
Before JORGENSON, GREEN, and RAMIREZ, JJ.
RAMIREZ, J.
In 1982, Jesus Arias, the patriarch of a wealthy Peruvian family, along with his wife Esther, transferred to their middle son, Arturo Arias Vargas, their interest in a mining company as an advance of inheritance. Like King Lear, this inter vivos transfer has caused a great deal of sibling rivalry. Carolina Arias Vargas, Evangelina Arias Vargas, Monica Arias Vargas, Rocio Arias Vargas, and Isabel Arias Vargas, all sisters, sued Fernando Arias Vargas, Daniel Arias Vargas, and Arturo Arias Vargas, all brothers. The brothers appeal the denial of their motion to dissolve an ex-parte temporary injunction obtained by the sisters. Because we hold that the pleadings and evidence justify the entry of the temporary injunction, we affirm the issuance of the injunction but reverse on the amount of the bond set by the trial court.
The sisters' complaint sought injunctive and declaratory relief for breach of fiduciary duty and conversion. The original transfer from Jesus Arias was traced to a more recent transfer of certain offshore, bearer corporate shares to the brothers without the sisters' permission, and the alleged conversion of approximately $4.4 million which allegedly belonged to the sisters. The sisters obtained a temporary injunction, which froze various safe deposit boxes containing bearer shares to the offshore companies and $4.4 million in bank accounts at NationsBank. After three evidentiary hearings, the trial court found that the sisters had met their burden of proof and correctly refused to dissolve the temporary injunction.
A temporary injunction is properly entered upon a showing of: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) the substantial likelihood of success on the merits; and (4) considerations of the public interest. See Oxford Int'l Bank and Trust, Ltd. v. Merrill Lynch, 374 So.2d 54, 55 (Fla. 3d DCA 1979). In considering a request for injunction, the trial court has wide discretion to either grant, deny, dissolve, or modify a temporary injunction, and an appellate court will not intercede unless the aggrieved party clearly shows an abuse of discretion. See Wise v. Schmidek, 649 So.2d 336, 337 (Fla. 3d DCA 1995); Richard v. Behavioral Healthcare Options, Inc., 647 So.2d 976, 978 (Fla. 2d DCA 1994).
The record before this Court shows that the sisters made an adequate showing in support of the entry of the temporary injunction. The sisters have shown common ownership of the bearer shares, as *596 well as the $4.4. million in bank accounts, and that a lifting of the injunction would expose those assets to conversion or dissipation by a third party over which the sisters have no control. Thus, if the assets are not shielded from the potential for conversion or dissipation, they might no longer be within the jurisdiction of the court. If the assets are taken outside the court's jurisdiction, the corpus of any possible constructive trust would no longer be available, thereby rendering such equitable relief unattainable should the sisters ultimately prevail on their complaint. See Castillo v. Vlaminck de Castillo, 701 So.2d 1198, 1199 (Fla. 3d DCA 1997). Moreover, no adequate remedy at law could restore possession of these shares or the monies to the sisters. The sisters also have a likelihood of success on the merits based upon their ownership interest in the subject assets.
There is record evidence to support a finding of common ownership of the bearer shares because the sisters had signature authority and access to keys which allowed entry into the safety deposit boxes that contained the bearer shares. Similarly, the sisters had signature authority over the accounts from which the money had been transferred by the brothers. Furthermore, the siblings' father also testified that all of the children shared equally in all of the assets of the businesses. The benefit of the injunction to the sisters, thus, substantially outweighs any likely harm to the brothers from the issuance of the injunction. Additionally, there is no showing that the issuance of the injunction damages the public interest.
In its order granting the temporary injunction, the trial court made clear, definite, and unequivocal factual findings sufficient to support each of the elements necessary to justify the entry of the temporary injunction. See City of Jacksonville v. Naegele Outdoor Adver. Co., 634 So.2d 750, 754 (Fla. 1st DCA 1994); Fla. R.Civ.P. 1.610(c). We therefore affirm the trial court's entry of the injunction.
As to the sufficiency of the $100,000.00 bond set by the trial court as a condition of the issuance of the injunction, the purpose of an injunction bond is to provide sufficient funds to cover the adverse party's costs and damages if the injunction is wrongfully issued. See Longshore Lakes Joint Venture v. Mundy, 616 So.2d 1047, 1048 (Fla. 2d DCA 1993). Although the parties were given an opportunity below to present evidence as to the amount of an appropriate bond, the amount set by the trial court appears to be inadequate in light of the amount in controversy, irrespective of the lost interest on the monies which have been frozen and the potential for legal fees and costs.
Thus, we hold that the trial court did not abuse its discretion in granting the temporary injunction and that, therefore, the motion to dissolve the temporary injunction was properly denied. We reverse, however, the order denying the brothers' motion to increase the injunction bond, and remand for reconsideration of the appropriate bond amount.
Affirmed in part, reversed in part, and remanded for further consistent proceedings.