# Third District Court of Appeal

## State of Florida

Opinion filed August 15, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-0815
Lower Tribunal No. 13-31175
_____


**Credo LLC,**
Appellant,

vs.

**Speyside Investments Corporation,**
Appellee.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Antonio Marin, Judge.

Law Offices of Paul Morris, P.A., and Paul Morris; Roniel Rodriguez, IV, for appellant.

Rothman and Tobin, P.A., Michael Rothman, and Ellen Patterson, for appellee.


Before LOGUE, LUCK and LINDSEY, JJ.

LINDSEY, J.

A seller of real property appeals an order requiring $3.3 million paid by a buyer at the closing on a sale of real property, intended to satisfy a preexisting mortgage, to be deposited into the court registry pending litigation by the mortgage holder, initiated after the closing, over the payoff amount. We affirm for the reasons set forth below.

## I.    BACKGROUND

This case began in August of 2006, when Sally Sawh executed a promissory note in favor of Fairmont Funding, LTD, predecessor-in-interest to Wells Fargo Bank, N.A. ("Wells Fargo") in the original principal amount of $3,000,000.00. As security for the note, Ms. Sawh and Paolo Dellacassa executed a mortgage on a parcel of real property located at 4575 Sabal Palm Road in Miami, Florida (the "Property"). It is this property that is the subject of yet a second appeal to this Court.

In August of 2012, appellant seller, Credo, LLC ("Credo") obtained a Sheriff's Deed to the Property in exchange for the payment of $10.00 (ten dollars). In October of 2013, Wells Fargo, the plaintiff below, filed the instant action seeking to foreclose on the mortgage and/or enforce the note naming Ms. Sawh, Mr. Dellacassa and Credo, among others, as defendants herein. While the foreclosure was pending, Credo contracted to sell the Property to appellee buyer, Speyside Investments Corp. ("Speyside").

2

On February 26, 2014, just prior to the closing, Credo filed a motion to redeem the mortgage purportedly pursuant to section 45.0315, Florida Statutes, and set it for hearing on a five minute motion calendar on March 10, 2014. The trial court entered an order granting the motion to redeem ("the March 10 Redemption Order") and authorizing Credo to tender to Wells Fargo, on or before May 1, 2014, the total sum of $3,347,233.21 ("$3.3 million"). In exchange, the trial court directed that "[u]pon redemption, this Order shall constitute a satisfaction of said mortgage, extinguishing the mortgage of record."

With the March 10 Redemption Order in hand, Credo sold the Property to Speyside on April 30, 2014, for the sum of $6,150,000.00 ("$6.15 million"), some of which Speyside borrowed and some of which Speyside paid out-of-pocket. At closing, the $3.3 million identified in the March 10 Redemption Order was disbursed to Wells Fargo. Credo pocketed the net sum of $1,815,336.89 ("$1.8 million") as part of this transaction. A Warranty Deed from Credo in favor of Speyside was recorded on May 6, 2014.

While Wells Fargo accepted the $3.3 million Speyside tendered at the closing to pay off the mortgage, it did not release its lien or otherwise recognize and comply with the March 10 Redemption Order. Instead, three weeks later, while still in possession of the $3.3 million, Wells Fargo moved the trial court for reconsideration or, alternatively, to vacate the March 10 Redemption Order. Wells

3

Fargo claimed that the amount was unliquidated and that the trial court should have held an evidentiary hearing before fixing the amount necessary to redeem the mortgage. The motion was accompanied by an affidavit from Wells Fargo alleging that the correct redemption amount was $4,624,169.03 ("$4.6 million"), or $1,276,935.82 ("$1.276 million") more than the amount that had been fixed by the trial court. The trial court denied the motion and entered an order dismissing the action below. Wells Fargo appealed both orders to this Court, which were consolidated in Wells Fargo Bank, N.A. v. Sawh (Credo I), 194 So. 3d 475 (Fla. 3d DCA 2016).

In Credo I, this Court found in favor of Wells Fargo, stating that "the amounts due to Wells Fargo under section 45.0315 were not liquidated when the motion to redeem was filed, at the time that motion was heard, or at any subsequent time." 194 So. 3d at 482-83. In so finding, this Court held that "because Wells Fargo's damages were not liquidated, the burden fell on Credo to have set an evidentiary hearing on its motion to redeem and to adduce evidence or to spread a stipulation on the record to prove the amounts that it was obligated to pay under section 45.0315 to redeem." Id. at 483.

Accordingly, we reversed the final order dismissing the foreclosure action, vacated the March 10 Redemption Order and remanded back to the trial court for an evidentiary hearing to determine the amount that must be paid to Wells Fargo to

4

redeem, i.e., payoff, the mortgage.  Id.  This Court further stated "[i]n light of this determination, we order Wells Fargo to *reimburse Credo any sums paid by it* in compliance with the March 10 [Redemption Order]."  Id.  (emphasis added).  On June 17, 2016, the mandate issued directing that such further proceedings in this cause take place.

Ten days later, Credo filed an emergency motion in the trial court for contempt for failure to comply with the mandate and for sanctions.  Credo alleged it tendered the $3.3 million to Wells Fargo and that, pursuant to the mandate, Wells Fargo should be held in contempt of court for failing to return those funds to Credo.[1]

Wells Fargo responded two days later with its own motion to enforce the mandate and for entry of an order permitting Wells Fargo to deposit the funds received in connection with the March 10 Redemption Order into the court registry, a law firm trust account or other escrow account.[2]  Wells Fargo alleged that the March 10 Redemption Order required Credo to pay an incorrect redemption amount, noted that Credo I does not address the sale of the Property by

---

[1] In this motion, Credo makes reference to the language contained in Credo I three times.  Therein, Credo incorrectly cites this Court's language in Credo I as ordering Wells Fargo *"to reimburse Credo any sums paid in compliance with the March 10 [Redemption Order]."*  In fact, the actual language ordered Wells Fargo "to reimburse Credo any sums paid *by it* in compliance with the March 10 [Redemption Order]."  See Credo I, 194 So. 3d at 483 (emphasis added).

[2] In this motion, Wells Fargo *correctly* cites the same language from the Credo I opinion that Credo *incorrectly* cited in its motion to enforce the mandate.

5

Credo to Speyside and asserted that the intent of this Court was to return the parties to the position they were in prior to the March 10 Redemption Order.[3]

On July 19, 2016, the trial court entered an order granting Credo's motion to enforce the mandate, requiring Wells Fargo to choose either to accept the $3.3 million in full satisfaction of the Mortgage or to deliver the $3.3 million to Credo, in which event, Speyside would be entitled to intervene.[4] Six days later, on July 25, 2016, Wells Fargo elected to deliver the $3.3 million to Credo. Speyside, having been granted leave to intervene, filed a motion to require the funds remitted to Credo by Wells Fargo on July 25, 2016 to be deposited into the court registry, essentially, seeking the same relief Wells Fargo had sought.[5]

On April 4, 2017, the trial court held a hearing, noticed as evidentiary, on Speyside's motion. Treating Speyside's motion as seeking injunctive relief, the

[3] Speyside was not a party to the Credo I appeal.
[4] At the time of entry of this order, Speyside had filed a motion seeking to intervene in the foreclosure case which was pending. After Wells Fargo elected to tender the $3.3 million to Credo, the trial court entered an order on August 5, 2016, granting Speyside's motion to intervene.
[5] There is no written response by Credo to this motion contained within the record on appeal. In addition, on July 28, 2016, Speyside filed a crossclaim against Credo for breach of warranties of title and unjust enrichment, and a counterclaim against Wells Fargo. In its crossclaim, Speyside alleged not only that Credo breached its warranty of title but that it has been unjustly enriched by wrongfully retaining the $3.3 million, which was intended to, but did not, satisfy Wells Fargo's mortgage. In addition, because Credo had pocketed $1.8 million from its sale of the Property to Speyside, Speyside alleged Credo has been unjustly enriched over and above the $3.3 million earmarked to pay off the mortgage by any additional amount Speyside may be required to pay pursuant the mandate in Credo I.

6

trial court entered an order requiring Speyside to post an $80,000.00 bond with the court within 72 hours, and ordering Credo to deposit the $3.3 million into the court registry within 72 hours from the posting of the bond by Speyside. The trial court specifically found:

> (a) That counsel for SPEYSIDE appeared, along with a representative on behalf of SPEYSIDE, and SPEYSIDE's expert witness;
> (b) That counsel for Plaintiff, WELLS FARGO BANK, N.A. appeared, without a representative from Plaintiff or any additional witnesses;
> (c) That counsel for CREDO appeared, without a representative from Credo or any additional witness;
> (d) That there is a substantial likelihood that the funds at issue, $3,347,233.21, will ultimately belong to Plaintiff than [sic] CREDO;
> (e) That the failure to deposit the $3,347,233.21, previously remitted to CREDO, into the Court Registry would result in irreparable harm to SPEYSIDE if the funds are not safe kept, as the realty at issue in this foreclosure action, now owned by SPEYSIDE, remains encumbered by Plaintiff's mortgage.
> (f) That the specific funds at issue were generated at closing upon SPEYSIDE's purchase from CREDO and were intended to be applied towards the payoff of Plaintiff's mortgage.
> (g) That the threatened injury, i.e., the possibility that CREDO may not safeguard the $3,347,233.21 and it may otherwise be unavailable when the total redemption amount owed to Plaintiff is determined, highly outweighs the possible harm caused to CREDO; and
> (h) That the issuance of temporary injunction is equitably justified. See Hullum v. Bre-lew Corp., 93 [So. 2d] 727 ([Fla]. 1957) and Jones v. Carpenter, 90 Fla. 407, 106 So. 127 (Fla. 1925).

The trial court based these findings on the following: "the arguments made by

counsel for the parties, the case law presented to this Court, this Court's review of all relevant papers, pleadings and orders and its interpretation of the intent of the Third District Court of Appeal's Mandate, *the proffer of testimony provided on behalf of SPEYSIDE* and for all reasons stated on the record[.]" (Emphasis added).[6] Further, the trial court specifically noted the equitable nature of the underlying action as an additional reason for requiring the funds to be deposited into the court registry. The very next day, Credo filed the instant appeal.

## I.    STANDARD OF REVIEW

A trial court is afforded broad discretion in granting, denying, dissolving, or modifying injunctions, and unless a clear abuse of discretion is demonstrated, an appellate court must not disturb the trial court's decision. Jackson v. Echols, 937 So. 2d 1247, 1249 (Fla. 3d DCA 2006) (citing Wise v. Schmidek, 649 So. 2d 336, 337 (Fla. 3d DCA 1995)); Vargas v. Vargas, 771 So. 2d 594, 595 (Fla. 3d DCA 2000). Our review is limited to whether the trial court's findings are supported by competent substantial evidence. See P & O Ports Fla., Inc. v. Cont'l Stevedoring & Terminals, Inc., 904 So. 2d 507, 510 (Fla. 3d DCA 2005) (an appellate court's review of a trial court's findings on factual matters is limited to whether they are supported by competent substantial evidence).

If a legal principle is involved, the standard of review is *de novo*. City of

_____

[6] Neither Credo nor Wells Fargo brought any witnesses to the hearing and neither requested to cross-examine Speyside's witnesses.

Miami Beach v. Kuoni Destination Mgmt., 81 So. 3d 530, 532 (Fla. 3d DCA 2012) (citation omitted); Gainesville Woman Care, LLC v. State, 210 So. 3d 1243, 1258 (Fla. 2017) ("The standard of review of trial court orders on requests for temporary injunctions is a hybrid. To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review.") (citing Fla. High Sch. Athletic Ass'n v. Rosenberg, 117 So. 3d 825, 826 (Fla. 4th DCA 2013)).

## II. ANALYSIS

### A. Entitlement to Injunctive Relief

The situation before the trial court at the conclusion of the evidentiary hearing was: (1) Wells Fargo was holding a pending foreclosure action on its mortgage against the Property wherein it was alleging $4.6 million due and owing; (2) Credo had possession of, and unrestricted access to, the $3.3 million turned over to it by Wells Fargo plus the $1.8 million dollars it had pocketed at the closing on the Property – a property for which it had paid only ten dollars; (3) Credo had no further obligation with respect to the Property because it had sold its interest to Speyside and a warranty deed had been recorded; (4) Speyside was holding legal title to the Property, for which it had already paid $6.15 million, and against which Wells Fargo had a pending foreclosure with $4.6 million alleged to be due and owing; and, (5) Credo did not dispute that it had agreed at the closing

9

on the sale of the Property, that $3.3 million of the $6.15 million Speyside paid to purchase this property was earmarked for disbursement to Wells Fargo to pay off its mortgage. It was against this backdrop that the trial court entered the order that is the subject of this appeal.

In order to be entitled to a temporary injunction, the moving party must plead and establish: (1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the movant outweighs any possible harm to the non-movant; and, (4) that the granting of a temporary injunction will not disserve the public interest. Reliance Wholesale, Inc. v. Godfrey, 51 So. 3d 561, 564 (Fla. 3d DCA 2010) (quoting Cordis Corp. v. Prooslin, 482 So. 2d 486, 489-90 (Fla. 3d DCA 1986)).

On appeal Credo argues that injunctive relief does not lie where there exists an adequate remedy at law. While this is a correct statement of the law, it is not dispositive of this appeal. Speyside responds with the assertion that the $3.3 million paid to Wells Fargo at closing came, not from Credo, but from Speyside. As such, Speyside argues "this is not a case where Speyside is seeking to freeze accounts or assets of Credo, out of concern that it may not be able to collect the funds later." In reply, Credo argues it has a right to the $3.3 million because this Court, in Credo I, ordered Wells Fargo to refund that amount to Credo.

10

**B. A likelihood of irreparable harm and the unavailability of an adequate remedy at law.[7]**

First, Credo's argument to the trial court, as well as in this appeal, is based on the flawed premise that this Court ordered Wells Fargo to pay $3.3 million to Credo in Credo I. We did not. The language of this Court's opinion in Credo I is clear and unambiguous. Therein, this Court ordered "Wells Fargo to reimburse Credo any sums *paid by it* in compliance with the [March 10 Redemption Order]." Credo I, 194 So. 3d at 483 (emphasis added). Since no funds had been paid *by Credo* in compliance with the March 10 Redemption Order, there were no funds to which Credo was entitled to be reimbursed by Wells Fargo.

Nevertheless, Credo contends in this appeal that those funds once belonged to Credo and "once again became an unrestricted asset of Credo."[8] However, Credo, in fact, explicitly represented to the trial court that Credo didn't "directly get the [$3.3 million], you have a settlement agent, someone that does the title, that takes the money and puts it in their trust account and then does the disbursement. So no, it [i.e., the $3.3 million] doesn't come directly from Credo."

Thus, the $3.3 million admittedly did not come from Credo prior to the closing. The $3.3 million came from Speyside and was given to Wells Fargo at the

---

[7] We write only to address the first element necessary for entitlement to injunctive relief and affirm, without discussion, as to the remaining three.

[8] See Reply Brief of Appellant at 2-4, Credo LLC v. Speyside Invs. Corp., No. 3D17-815 (Fla. 3d DCA Sept. 28, 2017).

11

closing by the title agent. The $3.3 million was held by Wells Fargo at all times prior to the issuance of the mandate in Credo I and continued to be held by Wells Fargo up until just after the entry of the trial court's order forcing Wells Fargo either to accept the $3.3 million in full satisfaction of the Mortgage or to pay it to Credo.

Second, while Speyside could certainly sue Credo for return of the $3.3 million, Speyside shouldn't have to. The $3.3 million at issue herein does not belong to Credo and never has. It either belongs to Wells Fargo or Speyside. Since Speyside, not Credo, paid the $3.3 million to Wells Fargo at closing, it was error to interpret the language in Credo I to require Wells Fargo, as one of two options, to return Speyside's funds earmarked for the satisfaction of the mortgage to Credo. And, because at that time, Speyside had not been granted leave to intervene, it was unable to argue its opposition to such to the trial court.

Finally, the trial court further found that the issuance of a temporary injunction was equitably justified. The Florida Supreme Court noted the court's equity powers in foreclosure actions in Arsali v. Chase Home Finance LLC stating that:

> Under Florida law, actions involving foreclosure of property are brought in courts of equity. The Florida Legislature recognized the need for equitable remedies in foreclosure actions and, thus, codified that foreclosure cases involving mortgages will be tried in equity courts. See § 702.01, Fla. Stat. (2010) (Equity) ("All mortgages

12

shall be foreclosed in equity. In a mortgage foreclosure action, the court shall sever for separate trial all counterclaims against the foreclosing mortgagee. The foreclosure claim shall, if tried, be tried to the court without a jury.").

121 So. 3d 511, 517 (Fla. 2013) (first internal citation omitted).

Moreover, "[u]nder Florida law, 'an equitable lien is a right, not recognized by law, to have a fund . . . applied in whole or in part to the payment of particular debt.'" Gendler v. Related Grp., 2009 U.S. Dist. LEXIS 139040, at *16 (S.D. Fla. Sept. 14, 2009) (quoting Hullum, 93 So. 3d at 730 (also cited by the trial court)). Further, "an equitable lien can be imposed if . . . a court declares that the equitable lien is necessary out of general considerations of justice." Id. at *16-17 (quoting In re Dorado Marine, Inc., 321 B.R. 581, 588 (M.D. Fla. 2005) (citing Jones, 106 So. 127 (also cited by the trial court)).

Florida courts have entered injunctions to protect the res of a trust implied by operation of law. See e.g., TJ Mgmt. Group, L.L.C. v. Zidon, 990 So. 2d 623, 625 (Fla. 3d DCA 2008) (holding that "an order freezing funds held in a bank account for further determination on the ownership rights to those funds is in the nature of an injunction properly entered"); Ga. Banking Co. v. GMC Lending & Mortg. Servs. Corp., 923 So. 2d 1224 (Fla. 3d DCA 2006) (finding injunctive relief appropriate to prevent dissipation of specific, identifiable funds that had been collected on behalf of the lender and were being held in trust for the bank); Vargas,

13

771 So. 2d at 595-96 (affirming the issuance of an injunction in a breach of fiduciary duty and conversion action where the plaintiffs "have shown a common ownership of the bearer shares, as well as the $4.4 million in bank accounts, and that a lifting of the injunction would expose those assets to conversion or dissipation by a third party over which the [plaintiffs] have no control" and the corpus of any possible constructive trust would no longer be available if the assets are taken outside the court's jurisdiction"); Castillo v. Vlaminck De Castillo, 701 So. 2d 1198, 1199 (Fla. 3d DCA 1997) (affirming the injunctive order where the mother sought imposition of a constructive trust on an account that her son established by improperly employing the proceeds of her $200,000.00 check made payable to him, allegedly on the understanding that he would purchase a certificate of deposit in the names of her and all her surviving children); Pendergraft v. C.H., 225 So. 3d 420, 421 (Fla. 5th DCA 2017) (citing Zidon, 990 So. 2d 623) ("An order freezing assets for further determination of the ownership right to those assets is in the nature of an injunction.").

Speyside correctly points out that this is not a case where a party seeks to enjoin funds that rightfully belong to an opposing party in litigation out of fear that it may not be able to later collect on any judgment it may be awarded. Aside from the fact that the $3.3 million never rightfully belonged to Credo, at the time of the closing, the $3.3 million was clearly identifiable, was not commingled with other

14

assets and was intended for the specific purpose of paying off Wells Fargo's mortgage on the Property. Thus, the trial court's injunction order, requiring Credo to deposit the $3.3 million into the court registry pending further determination as to the ownership rights to those funds, was properly entered.

After careful review, we are not persuaded by the arguments put forward by the dissent. We agree with the law cited by the dissent. We simply do not find it applicable to the somewhat unique facts of this case. First, the dissent places great emphasis on Speyside's purported failure to appeal the trial court's erroneous July 19, 2016 order which gave Credo the funds escrowed by Speyside. The dissent argues that "Speyside has not appealed that order. Speyside cannot collaterally attack that non-appealed order in this separate appeal to the injunction order." The argument misapprehends the record. Speyside could not have appealed that order: Speyside was not a party when that order was entered.

Speyside was not granted leave to intervene until August 5, 2016, which was well after the trial court had entered the July 19, 2016. The case cited by the dissent, Marine Midland Bank Cent. v. Cote, 384 So. 2d 658, 659 (Fla. 5th DCA 1980), involved a bank and an individual who were parties to the litigation at the time the non-appealed order was entered. The rule of Marine Midland regarding a party's failure to appeal an order simply does not extend to a non-party like Speyside who could not have appealed the order.

15

Second, the dissent places particular reliance on its understanding that "the lawsuit between Speyside and Credo is not a foreclosure suit." We respectfully disagree with this characterization. The dispute between Speyside and Credo is inextricably part of the foreclosure. Our prior opinion in Credo I, which gives rise to this dispute, was entirely based on applying foreclosure law in the pending foreclosure. In that foreclosure action, Speyside paid the money at issue into escrow to exercise Credo's right to redeem. The trial court order under review characterized the matter as involving a "foreclosure action:" it found the failure to deposit the funds escrowed by Speyside "into the Court Registry would result in irreparable harm to SPEYSIDE if the funds are not kept safe, as the *realty* at issue *in this foreclosure action,* now owned by SPEYSIDE, remains encumbered by Plaintiff's *mortgage.*" (Emphasis added).

Because this case does indeed involve a foreclosure action, the case cited by the dissent, Sammie Investments, LLC v. Strategica Capital Assocs., Inc,, 2018 Fla. App. LEXIS 6336 (Fla. 3d DCA May 9, 2018), is inapposite. Sammie Investments involved a garden variety business dispute with claims for breach of contract, misrepresentation and unjust enrichment: it did not involve a dispute over possession of funds escrowed during a foreclosure action like the case before us.

III. **CONCLUSION**

Because the $3.3 million which the trial court ordered to be deposited into

16

the court registry never belonged to Credo, because Credo does not now have, and has not ever had, any legal claim to those funds, and because it would be inequitable to allow Credo unrestricted access to $3.3 million that belongs either to Speyside or to Wells Fargo during the pendency of the underlying litigation, we affirm.

Affirmed.

LOGUE, J., concurs.

LUCK, J., dissenting.

Speyside Investments Corporation sued Credo LLC for breach of title warranties and unjust enrichment related to the sale of real property in Miami-Dade County. In a nutshell, Speyside alleged that Credo misrepresented that the title to the property it sold would be free and clear of a preexisting mortgage. Speyside moved to enjoin Credo by requiring that a portion of the money Speyside paid for the sale of the property be paid into the court registry. The trial court granted the motion, and the majority opinion affirms. I dissent because Speyside has not shown, as a matter of law, that it met the requirements for an injunction – irreparable harm and no adequate remedy at law.

I would normally spend the next few paragraphs explaining that a preliminary injunction ordering the deposit of the money at issue in a damages case (like this one) is unlawful, but that is unnecessary because a few months ago the court issued an opinion explaining the rule and going through the case law better than I ever could. Please excuse the lengthy block quote but given how recent and thorough our opinion was, it is worth it:

Strategica has failed to meet its burden of proving that it will incur irreparable harm because it has no adequate remedy at law. As defined by this Court, "irreparable injury is injury that cannot be cured by money damages."

18

Lutsky v. Schoenwetter, 172 So. 3d 534, 534 (Fla. 3d DCA 2015) (citing Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1092 (Fla. 3d DCA 2014)). And, "[t]he test for unavailability of an adequate remedy at law, under these requirements, is 'whether a judgment can be obtained, not whether, once obtained, it will be collectible.'" Lopez-Ortiz v. Centrust Sav. Bank, 546 So. 2d 1126, 1127 (Fla. 3d DCA 1989) (citations omitted).

Here, even if Strategica is ultimately successful in establishing entitlement to the $75,000 purported loan or to twenty percent of Sammie's profits from the sale of the 9 Mile property, it will only be entitled to an award of money damages. Strategica, therefore, has an adequate remedy at law to recover the disputed funds. Accordingly, because the injury Strategica is attempting to prevent is purely monetary and can be cured by money damages, Strategica will not suffer irreparable harm.

As this Court stated in Konover Realty Associates, Ltd. v. Mladen:

It is entirely settled by a long and unbroken line of Florida cases that in an action at law for money damages, there is simply no judicial authority for an order requiring the deposit of the amount in controversy into the registry of the court, or

indeed for any restraint upon the use of a defendant's unrestricted assets prior to the entry of judgment. The rule has been specifically applied, as on general principles it must be, to an action like this one for the recovery of unsegregated earnest money, and is unequivocally not affected by the claim that recovery upon any subsequently-entered judgment may be made difficult by the dissipation or unreachability of the debtor's assets.

511 So. 2d 705, 706 (Fla. 3d DCA 1987) (internal citations omitted); see also Leight v. Berkman, 483 So. 2d 476, 477 (Fla. 3d DCA 1986) (citations omitted) ("The law is unequivocally established that an injunction against the disposition of a defendant's assets simply may not be granted upon the ground that their preservation is required to satisfy a subsequent money judgment."); De Leon v. Aerochago, S.A., 593 So. 2d 558, 559 (Fla. 3d DCA 1992) ("Injunctive relief may not be used to enforce money damages, or to prevent any party from disposing of assets until an action at law for an alleged debt can be concluded." quoting Hiles v. Auto Bahn Federation, Inc., 498 So. 2d 997, 998 (Fla. 4th DCA 1986)).

V.    CONCLUSION

20

Because Strategica has suffered no irreparable injury that cannot be cured by money damages and an adequate remedy at law is available, we reverse the trial court's order granting Strategica's motion for temporary injunctive relief and remand for further proceedings consistent with this opinion.

Sammie Investments, LLC v. Strategica Capital Assocs., Inc., No. 3D17-2052, 2018 WL 2122792, at *3 (Fla. 3d DCA May 9, 2018). I wasn't on the Sammie Investments panel, but I fully concur.

Here, the trial court's finding of irreparable harm is the same as the one the Sammie Investments court found to be legally insufficient. Our trial court found that "the threatened injury, i.e., the possibility that CREDO may not safeguard [the money] and it may otherwise be unavailable when the total redemption amount owed to Plaintiff is determined, highly outweighs the possible harm caused to CREDO." The Sammie Investments trial court found that "if Sammie does not 'have any other assets based on the only testimony provided, then there would be irreparable harm because there would be nowhere else from where to gain that money.'" 2018 WL 2122792, at *2. As we have explained, "[t]he test for unavailability of an adequate remedy at law, under these requirements, is 'whether a judgment can be obtained, not whether, once obtained, it will be collectible.'" Lopez-Ortiz, 546 So. 2d at 1127.

21

But despite this long and unbroken line of Florida cases, the majority opinion gives four reasons for why the injunction was lawful here: (1) we did not order in the prior appeal that the money be returned to Credo; (2) the money "does not belong to Credo and never has"; (3) the injunction was "equitably justified" as part of the trial court's "equity powers in foreclosure actions"; and (4) "Florida courts have entered injunctions to protect the res of a trust implied by operation of law." None of these reasons support an exception to the general rule.

Reasons 1 and 2. We did not order the money returned and the money does not belong to Credo. First, the majority opinion says that Credo is not entitled to the money because our earlier opinion in Credo I did not order the money returned to the company. Regardless of whether this court did or did not order the money returned to Credo in the prior appeal, the trial court ordered the money returned to Credo, and Speyside has not appealed that order. Speyside cannot collaterally attack that non-appealed order in this separate appeal of the injunction order. See Marine Midland Bank Cent. v. Cote, 384 So. 2d 658, 659 (Fla. 5th DCA 1980) ("The parties have the right to appeal any matter by which they may be aggrieved and their failure to do so acts as an acceptance of the propriety of the matter."). Given that, Credo cannot improperly have money that the trial court ordered it have. Based on the trial court's unappealed order, the money was properly in Credo's bank account.

22

In any event, the fact that Credo may not be entitled to the money goes to the likelihood of Speyside's success on the merits of its breach of title warranties and unjust enrichment claims, but that is separate and apart from whether Speyside would be irreparably harmed and had an adequate remedy at law. Look at Sammie Investments. There, too, the defendant had the plaintiff's money it wasn't entitled to have. Still, we determined the plaintiff "ha[d] an adequate remedy at law to recover the disputed funds." Sammie Investments, 2018 WL 2122792, at *3. Likewise, in this case, just because Credo should never have had the money, doesn't mean that Speyside can't recover the money at the end of the lawsuit.

The majority opinion suggests that the facts of this case are "somewhat unique," but they aren't. Every day, dozens of plaintiffs file breach of contract and unjust enrichment complaints in the circuit courts of this state alleging that they were ripped off by another's false promises and trickery. But just because the defendant's scheme to make away with the plaintiff's money was different here than it was in Sammie Investments, or Konover Realty, or Lopez-Ortiz, doesn't mean the trial court can do an injunctive end-run around the requirement that there be no adequate remedy at law and give relief to the plaintiff without discovery or trial. No two cases are alike, and each variation on the age-old bait-and-switch scheme does not change three decades of precedent.

Reason 3. The injunction was equitably justified under the trial court's

23

equity powers in foreclosure. The majority opinion reasons that because the case between Speyside and Credo "involve[s] a foreclosure action," and foreclosure is an equitable remedy, then the temporary injunction was "equitably justified." There are two problems with this reasoning.

First, the dispute between Speyside and Credo was not a foreclosure action. Speyside intervened for the purpose of filing a counterclaim against Credo for breach of the title warranties and unjust enrichment seeking return of the money paid for the property. Speyside's counterclaim against Credo did not seek to foreclose on the property, and Speyside cannot seek relief it did not request.

Second, even if this was a foreclosure action, the trial court's "equity powers in foreclosure actions" do not extend so far as to grant a preliminary injunction without meeting the necessary requirements (like irreparable harm and no adequate remedy at law). I know of no case, and the majority opinion does not cite any, that allows the trial court to grant a Florida Rule of Civil Procedure 1.610 preliminary injunction in a foreclosure case without the movant having to prove she was irreparably harmed or did not have an adequate remedy at law. The cases cited by the majority opinion deal with equitable liens but Speyside did not plead an equitable lien claim and, even if it did, an equitable lien is not available where there's an adequate remedy. See Johns v. Gillian, 184 So. 140, 145 (Fla. 1938) ("But there is no such lien where the expenditures are made with knowledge of the

24

real state of the title; nor will such a lien arise where there is an adequate remedy at law." (quotation omitted)). Speyside has an adequate remedy at law – this breach of title warranties lawsuit against Credo.

Reason 4. The Florida courts have entered injunctions to protect the res of a trust. Speyside has not pled a claim for constructive or resulting trust that would trigger this exception to the irreparable harm requirement. Again, Speyside's claims were for breach of title warranties and unjust enrichment. The court – this one and the trial court – cannot grant relief where it has not been pled. See Brickell Station Towers, Inc. v. JDC (Am.) Corp., 549 So. 2d 203, 203 (Fla. 3d DCA 1989) ("We hold that the trial court decided matters which were not the subject of appropriate pleadings. In granting relief which was neither requested by appropriate pleadings, nor tried by consent, the trial court entered the order in violation of BST's due process rights."); see also Nabinger v. Nabinger, 82 So. 3d 1075, 1076 (Fla. 1st DCA 2011) ("In modification proceedings, as in other civil matters, courts are not authorized to award relief not requested in the pleadings."); Bilow v. Benoit, 519 So. 2d 1114, 1117 (Fla. 1st DCA 1988) ("The trial court erred in granting judgment for appellee on the unpled defense of forfeiture, for a judgment based upon an issue outside the pleadings cannot stand."). Because Speyside did not plead a constructive or resulting trust, the trial court could not grant an injunction on that basis.

\* \* \*

The majority opinion strays from the entirely settled principle, reaffirmed only a few months ago, that in an action at law for money damages there is no judicial authority for an order requiring the deposit of the amount in controversy into the registry of the court. I would not break this unbroken line of Florida cases.